## ACE GRAIN CO., Inc. v. AMERICAN EAGLE FIRE INS. CO. OF NEW YORK et al.

United States District Court
S. D. New York.

Feb. 14, 1951.

---

2. Hitaffer v. Argonne Co., D.C.Cir., 183 F. 2d 811.

Otto & Easterday, New York City, for plaintiff.

Hill, Rivkins & Middleton, New York City, by Gregory S. Rivkins and John J. Killea, New York City, for defendant Rhode Island Ins. Co. appearing specially.

McGOHEY, District Judge.

This is a motion to quash service of process on the defendant Rhode Island Insurance Company (hereafter called "Rhode Island"). The suit was removed here from the New York Supreme Court. There is diversity of citizenship and the amount in controversy is sufficient for jurisdiction. A motion to remand was withdrawn after the defendant American Eagle Fire Insurance Company settled the claim against it.

It is conceded that service was not made on any officer or managing agent of Rhode Island in New York. Process was served on the Superintendent of Insurance of the State of New York and on the defendant by registered mail addressed to and received by it in Philadelphia, Pennsylvania, pursuant to Section 59–a of the New York Insurance Law.

This statute provides that any of certain enumerated acts,[1] if done in New York by a foreign insurance company not authorized to do business in New York, "is equivalent to and shall constitute an appointment" by such company of the Superintendent of Insurance as the "true and lawful attorney" of such company to accept service of process in a suit such as this. Rhode Island asserts that it did none of the enumerated acts in New York and that the statute is unconstitutional.

The action is for damages for alleged breaches of two contracts of insurance issued by Rhode Island to the plaintiff on or about November 17, 1949. On that date Rhode Island was concededly a foreign insurance company not authorized to do business in New York. Prior to July 1, 1948, it had been so authorized.

On November 17, 1949, when the policies were issued, and thereafter, Rhode Island was listed in the New York telephone directory with an address at 44 Wall Street, where it had maintained its office while authorized to do business in New York. There was also listed, together with the New York address, Rhode Island's address in Philadelphia, Pa., where its main office is located. By calling this New York telephone number one could be connected through to the Philadelphia office, at the rate of a local New York call. Rhode Island was also listed under another New York number at the New York address (also 44 Wall Street) of one John Davies, the marine settling agent of Rhode Island. Davies indeed was the person to whom Rhode Island directed the plaintiff to submit its proof of loss, which was done, and it was Davies who, on behalf of Rhode Island, denied liability.

The two contracts of insurance were delivered to the plaintiff in New York after negotiations conducted by telephone between plaintiff's broker in New York and

1. Sec. 59–a subd. 2. "(a) Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer: (1) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments or other considerations for such contracts, or (4) any other transaction of business, * * *."

an official of Rhode Island who claims he was in Philadelphia during the telephone negotiations. Premiums were paid from New York. Rhode Island claims that it "ceased" doing business in New York on June 30, 1948, and on September 28, 1948 revoked its appointment of the Superintendent of Insurance as its attorney for service of process. However, it appears from the affidavit of C. H. Williamson, its Vice President when the contracts were issued, that Rhode Island did continue "to do business" in New York at least through two controlled corporations, if not directly, up until at least September 6, 1949.[2]

The foregoing facts, in my opinion, establish that Rhode Island performed in New York at least some of the acts enumerated in Sec. 59–a. Certainly the contracts were delivered to the plaintiff in New York. The claims were investigated in New York by Rhode Island's settling agent Davies. Rhode Island notified the plaintiff in New York that Davies was its agent for this purpose, and it was Davies who rejected the plaintiff's claims in New York. Moreover, Rhode Island listed a New York address and telephone number, and used them in its business. All these taken together constitute the "transaction of business" in New York by Rhode Island within the meaning of the statute.

Rhode Island contends that thus construed New York's statute deprives it of due process and of equal protection of the laws, and that it is an "invalid and unwarranted infringement upon interstate and foreign commerce." The notice of motion also asserted that the section contravenes the New York Constitution. But this point was neither argued nor briefed, and so I deem it to have been waived.

Although insurance business conducted across state lines constitutes interstate commerce,[3] it has been clear, at least since the passage of the McCarran Act,[4] that there can be no question of the power of the several states to regulate such business within the limits there laid down by Congress.[5] I find nothing in the New York statute which transgresses any Congressional provisions, and so the "interstate commerce" contention is rejected.

The question remains whether the statute denies due process or equal protection. I think it does not. Subdivision 1 of the Act states the purpose of the New York Legislature as follows: "The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this section, what constitutes doing business in this state, and also exercises powers and privileges available to the state by virtue of public law number fifteen, seventy-ninth congress of the United States, chapter twenty, first session, senate number three hundred forty, as amended, which declares that the business of insur-

2. Rhode Island, subsequent to the commencement of this suit, was put in charge of an equity receiver in the State of Rhode Island upon application of that state's Superintendent of Insurance. The order of appointment directs the receiver to carry on Rhode Island's business. It provides moreover that there is no adjudication of insolvency and that no policy theretofore issued shall "be affected" by entry of the decree. Although this circumstance was strongly

urged as a ground for quashing the service, I deem it irrelevant.

3. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440.

4. 15 U.S.C.A. § 1011 et seq.

5. See Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342; Robertson v. People of State of California, 328 U.S. 440, 461–462, 66 S.Ct. 1160, 90 L.Ed. 1366.

ance and every person engaged therein shall be subject to the laws of the several states."

■ It is too late to question the power of New York to impose appropriate regulations on foreign insurers who seek authorization to do business in the state. Among the regulations are those requiring the designation of the Superintendent of Insurance as attorney to accept service of process in actions against the authorized foreign insurer, and the maintenance within the state of reserves in such amounts as the Superintendent requires for payment of claims. This case raises the question whether New York may, in the interest of domestic policyholders, impose similar regulations on foreign insurers who, without authorization, by the use of the mails, telephone and agents located here do in fact transact business in New York. It is urged that the term "doing business" is one of fixed content in the decisions. And that as thus defined it does not embrace what Rhode Island did here. It is said, for instance, that although Davies was indeed "an agent" of Rhode Island, he was not such that service on him would bind the Company, because he was not its "managing agent" and that Rhode Island's activities in New York did not constitute "doing business" under the decision in Minnesota Commercial Men's Ass'n v. Benn.[6] There the Supreme Court held that the Association was not "doing business" in Montana since the insurance contract which had been solicited by mail was "executed and to be performed" in Minnesota. The Association had no office and no solicitors in Montana, and, although under its policy it could investigate claims in Montana, Benn's was not investigated. But in Travelers Health Ass'n v. Com. of Virginia,[7] decided June 5, 1950, the Court held

"the narrow grounds relied on * * * in the Benn case" not to be "controlling in considering what constitutes 'doing business' sufficiently to justify regulation [of an unauthorized foreign insurer] in the state where the *effects of the 'business' are felt * * *"* (emphasis supplied), and sustained a statute providing for substituted service on an unauthorized foreign insurer. The business of insurance across state lines is "affected with a vast public interest".[8] Its regulation is, by the McCarran Act, left to the states. And the state's " 'degree of interest' " in seeing that the obligations of insurance contracts are "faithfully carried out" and the consequences of those obligations, are to be given " 'great weight' " in determining the state's power to regulate. These considerations are to be preferred to " 'conceptualistic discussion of theories of the place of contracting or of performance.' "[9] The Due Process Clause does not forbid a state to protect its citizens from injustice.[10] It requires only that the state's action not offend traditional notions of "fair play" and "substantial justice."[11] Substituted service of process such as provided here does not so offend since it is "reasonably calculated to", and in this case did in fact, give Rhode Island "actual notice of the * * * [suit] and an opportunity to be heard."[12]

In requiring Rhode Island to post a sufficient bond as a condition of filing an answer and making defense, New York is requiring no more of Rhode Island than it constitutionally requires of any authorized foreign insurer. Rhode Island has no constitutional right to preferential treatment. No denial of equal protection has been shown, but rather the contrary.

The motion is denied.

Settle order.

6. 1923, 261 U.S. 140, 43 S.Ct. 293, 294, 67 L.Ed. 573.

7. 339 U.S. 643, 647, 70 S.Ct. 927, 929.

8. Prudential Ins. Co. v. Benjamin, note 5 supra 328 U.S. at 415, 66 S.Ct. at 1147, 90 L.Ed. 1342.

9. Travelers Health Ass'n v. Virginia, note 7 supra 339 U.S. at 648, 70 S.Ct. at page 929.

10. Id., 339 U.S. at 649, 70 S.Ct. 927.

11. McDonald v. Mabee, 243 U.S. 90, 91–92, 37 S.Ct. 343, 61 L.Ed. 608.

12. Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278.