GRACE KAYE et al., Plaintiffs, *v.* " JOHN DOE " et al., as Underwriters at LLOYDS OF LONDON, LTD., Defendants.

Supreme Court, Special Term, Bronx County, October 20, 1953.

*George W. Clark* for defendants appearing specially.

*Alfred S. Julien* and *Shirley P. Thau* for plaintiffs.

MATTHEW M. LEVY, J.  The issues which require resolution on these motions involve the construction, applicability and constitutionality of the recently enacted New York statute providing for service of process in this State upon an insurance company not authorized to do business here, where the suit is instituted by an injured person on the basis of an uncollectible judgment obtained against the assured, and also the meaning and efficacy of the clauses contained in the policy of liability insurance which provide for service upon named resident attorneys. I am told that this is a matter of first impression, and I myself have found no authority in point.  But, as I view it, the journey on the sea of judicial exploration upon which we are thus compelled to embark, is not entirely an uncharted one.  We shall perhaps encounter some shoals, but they will not, I think, substantially impede the course of our navigation or prevent our reaching our destination with safety.  Let us then commence our travels at the home port — first storing up a sufficient supply of factual and historical victuals to satisfy the needs of the crew.

The plaintiffs, residents of this State, have duly recovered judgment in this court against a domestic corporation for personal injuries arising out of an airplane accident.  The action was defended by the judgment debtor's liability insurance carrier, named herein as " under-writers at Lloyds of London, Ltd.", and hereinafter sometimes referred to simply as " Lloyds ".  On behalf of the assured, Lloyds has appealed from

the judgment, but has refused to file the usual undertaking as security for the collectibility of the judgment in the event of affirmance *. Execution having been returned unsatisfied, the debtor corporation being insolvent and the judgment remaining unpaid, the present action upon the policy of liability insurance was instituted by the judgment creditors against Lloyds to recover the amounts of the judgment. Lloyds was and is not authorized to do an insurance business in this State (cf. Insurance Law, § 425). The summons was served on the Superintendent of Insurance of New York State and also upon Mendes & Mount, Esqs., attorneys for Lloyds — in the first instance, in pursuance of section 59-a of the Insurance Law providing for " *Service of process on superintendent as attorney for unauthorized insurers* "; and in the second instance, in pursuance of the certificate of insurance itself, which provided for such service of process under circumstances specified in the policy. The defendants have appeared specially and moved before me to vacate each service of process upon the ground that jurisdiction has not been obtained over their person in this suit.

It is interesting at this point to observe that perhaps the first enactment by the State of New York on the subject of insurance companies and their regulation was entitled " *An ACT to prevent Foreigners from becoming Insurers in certain cases in this state.*" (L. 1814, ch. 49.) Since then the Legislature has gone far to accommodate and regulate what is called the " Alien " and the " Foreign " insurer (Insurance Law, § 4, " *Definitions* "). Difficulties there always were in securing the enforcement of the rights of resident policyholders and beneficiaries against unauthorized out-of-State insurers. To subject such companies to the jurisdiction of our courts, the Legislature, in 1949, enacted chapter 826, as section 59-a of the Insurance Law — following a model Unauthorized Insurers Service of Process Act, drafted by the National Association of Insurance Commissioners (see 1 Richards on Insurance [5th ed. by Warren Freedman], § 55).

Subdivision 1 thereof reads as follows: " The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this

---

* The pending undetermined appeal is of no significance whatever on the present issues (*Materazzi* v. *Commercial Cas. Ins. Co.,* 157 Misc. 365, affd. 246 App. Div. 522).

state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this section, what constitutes doing business in this state, and also exercises powers and privileges available to the state by virtue of public law number fifteen, seventy-ninth congress of the United States, chapter twenty, first session, senate number three hundred forty, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states.''

Paragraph (a) of subdivision 2 provides that certain designated activities within the State shall constitute an appointment by the insurer of the Superintendent of Insurance as the true and lawful attorney upon whom may be served all legal process on behalf of '' an insured or beneficiary ''. That subdivision reads as follows: '' Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer: (1) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments or other considerations for such contracts, or (4) any other transaction of business, is equivalent to and shall constitute an appointment by such insurer of the superintendent and his successor in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer.''

The defendants do not raise objections or contend that the factual situation outlined in paragraph (a) of subdivision 2 of section 59-a relating to Lloyds' activities in this State does not exist here in sufficient degree to warrant its application in the instant case. They contend rather that the section may not be invoked because the present suit is not at the instance of the insured named in the policy but of third-party judgment

creditors of the insured, and that section 59-a is restricted in its remedial intent and effect to suits by policyholders only. In support of such claimed limitation the defendants rely on that portion of subdivision 1 in which is expressed the matter of legislative " concern that many residents of this state *hold* policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to *such* residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies." (Italics supplied.) However, that states merely the subject of legislative interest — and if the solicitude of the Legislature as there expressed is perhaps shrouded in doubt, none exists in that portion of the enactment which states the legislative purpose. Thus, subdivision 1 also provides that the " purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of *insureds or beneficiaries* ", and subdivision 2 provides that engaging in designated activities in this State will subject the insurer to suit in this State " by or on behalf of an *insured or beneficiary* arising out of any such contract of insurance," and that such suit may properly be instituted by service of process on the Superintendent of Insurance (italics supplied). It is quite clear, therefore, that the three principal elements comprising this jurisdictional complex are the unauthorized insurer, the contract, and any suit arising out of such contract in favor of a resident — whether the plaintiff in such suit be the insured or the beneficiary. The contract is no different from those issued by authorized insurers. The suits arising therefrom are no different. The permissible suitors likewise should be no different. Considering the problem and concern involved, the purpose declared, and the broad language employed, a construction which would classify the suitors and favor only some of them would suggest a legislative discrimination utterly unsound and most unlikely.

What is the nature — contractual and legislative — of the personal injury liability insurance policy or the motor vehicle and aircraft insurance policy (Insurance Law, § 46, subds. 13, 19) which — when issued by a duly licensed and authorized insurer — determines the status of the plaintiff entitled to sue on the policy? Under the common law it was the prevailing view that the proceeds of a policy of liability insurance could not be reached by an injured third party (*Burke* v. *London Guar. & Accident Co.*, 199 N. Y. 557). And, as a matter of business practice, the usual insurance contract contained a

provision that the insurer could be subjected to suit only by the insured and only for the recovery of loss actually sustained by the insured. A remedial statute — formerly section 109 of the Insurance Law of 1909, presently paragraph (b) of subdivision 1 of section 167 of the Insurance Law — was enacted to permit suit by the injured third party to recover upon an uncollected judgment despite the insolvency of the insured; and contracts of insurance are enforcible in conformity with that section even though the issued contract does not comply therewith (Insurance Law, § 143).

Under the facts existent in this case the judgment creditors here are not mere strangers, naked of any relationship to the policy. On the contrary, as the injured persons, they are within one of the two classes of those distinctly intended and desired to be protected by the statute, and therefore (if legally permissible so to determine) by the policy. " The purpose of the provision [of the then section 109] is apparent. It is made for the benefit of persons injured or suffering damage and not solely for the benefit of the insured. The latter may be one of the reckless, impecunious kind, as is so often the case, indifferent to a judgment against him and execution-proof." (CRANE, J., concurring in *Bakker* v. *Ætna Life Ins. Co.*, 264 N. Y. 150, 153–154.) " In the light of the common law before the enactment of section 109 of the Insurance Law, the attendant injustice and the mischief which the Legislature was seeking to cure, we must conclude that the statute was drawn for the protection of injured plaintiffs. The words of the section give express protection to ' the injured person, or his or her personal representative.' " (*Jackson* v. *Citizens Cas. Co.*, 277 N. Y. 385, 390.) " Having in mind the sense of immunity of the owner protected by the insurance and the possible danger of a less degree of care due to that immunity, it would seem to be a reasonable provision by the State in the interest of the public, whose lives and limbs are exposed, to require that the owner in the contract indemnifying him against any recovery from him should stipulate with the insurance company that the indemnity by which he saves himself should certainly inure to the benefit of the person who thereafter is injured. Section 109 does not go quite so far. It provides that the subrogation shall take place only when the insured proves insolvent or bankrupt, and leaves the injured person to pursue his judgment against the insured if solvent without reliance on the policy." (*Merchants Mut. Automobile Liability Ins. Co.* v. *Smart*, 267 U. S. 126, 129-130).

While these pronouncements of our highest courts may in some respects be deemed obiter dicta, I feel myself entitled — with their aid — to assume that we are steering on a straight course and in clear weather. I hold that, in view of the assured's insolvency, the injured persons are in a sense " beneficiaries " of the insurance contract not alone within the meaning of section 167, but also within the language of section 59-a. True, a beneficiary is usually named by the assured in certain types of policies — such as a relative of the policyholder in life insurance contracts or a mortgagee in fire insurance contracts. True, too, the beneficiary is not normally specifically named by the policyholder in personal injury or property damage liability insurance policies. But section 59-a is not in any way expressly restricted to life or fire insurance contracts, and there is no reason or justification for my imposing such a limitation. Apart therefrom, it was long after the adoption of former section 109 that section 59-a was enacted to extend the same protection to suitors against unauthorized out-of-State insurers. It is hardly essential to expand upon the anomalous result of a construction — necessarily strained — which would have the Legislature assuring suitable redress to those injured by policyholders of licensed insurers, while withholding such redress from others equally entitled to be protected and equally disadvantaged as against unauthorized alien or foreign insurers.

Section 59-a was held constitutional in *Ace Grain Co.* v. *American Eagle Fire Ins. Co.* (95 F. Supp. 784), in a suit instituted by a policyholder. Suggesting a distinction, the defendants here contend that as they are nonresidents, not subject to the jurisdiction of the courts of this State over their person, and that as they have not consented to the instant suit, any construction of section 59-a which subjects them to it at the behest of third parties, would render the statute unconstitutional. Also, the defendants submit that section 167 is ineffective as against unauthorized insurers, that compliance with the section is a matter of voluntary action only, and that — since the present policy does not contain a provision permitting suit by judgment creditors in the circumstances here — Lloyds is insulated against service of process against it in this State. The defendants quote from the opinion in *Merchants Mut. Automobile Liability Ins. Co.* v. *Smart* (267 U. S. 126, 130), that " It is to be remembered that the assumption of liability by the Insurance Company under Section 109 [now

section 167] is entirely voluntary. It need not engage in such insurance if it chooses not to do so."

In my view, the defendants' interpretation of the language of the Supreme Court of the United States is erroneous, and their contention based upon section 167 is unsound. These are declarations of statutory enactment and a judicial determination of constitutionality in an insurer's choice only to deliver or not to deliver a contract of insurance. Refusal of delivery is of course a matter of voluntary action. When, however, a nonconforming contract is in fact voluntarily delivered (which as a consequence invokes the application of section 167) such a contract is to be construed pursuant to section. 143 in the same manner as a complying contract. And if in the circumstances, the unauthorized insurer does certain acts in this State, bringing him within the purview of the clauses of paragraph (a) of subdivision 2 of section 59-a so as to warrant service of process upon the Superintendent of Insurance, there is no breach of any protective constitutional provisions. The Unauthorized Insurers Service of Process Act as enacted by the State of Virginia has been declared constitutional in *Travelers Health Assn.* v. *Virginia* (339 U. S. 643, 649), and I hold that the substantially similar New York statute is equally immune from attack. Any other conclusion would tend to give the out-of-State insurer greater (not equal) protection of the laws, impair the just claims of New York citizens, and deprive them of the obligations to them voluntarily assumed by such insurer. Due process does not impose such frustration. Nor is it necessary to grant a boon to the alien insurer in order to escape the charge that what has been done does not constitute an unwarranted infringement on foreign commerce. If, as has been held, the statute is valid when invoked by the resident " policyholders ", there is no constitutional basis for holding it invalid when brought into play by the resident " beneficiary ". In view of the decision of the Supreme Court of the United States, it seems to me that the issue at this date is truly not one of constitutional limitation, but rather of statutory policy and construction. And, as has been seen, that requires the inclusion rather than the elimination of the injured person as a permissible suitor.

Adjusting our compass, therefore, from this vantage-point, what we now see is our destination — quite distinctly I think, and not in any way hampered by a disturbing fog. We can be securely moored to the pier of a just result, built upon foundations of sound and applicable legal principles. I hold that the

service of process upon the Superintendent of Insurance was valid and effective under section 59-a to give this court in the instant suit due jurisdiction over the person of the defendants.

We are now beckoned to take an additional if not incidental excursion. What of the service of the summons upon Mendes & Mount, Esqs., based upon certain special provisions of the policy? The clauses are numbered " 8a. U. S. A.", and read as follows:

" It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

" It is further agreed that service of process in such suit may be made upon Messrs. DUNCAN & MOUNT, 27 William Street, New York City, N. Y. and, that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

" Messrs. DUNCAN & MOUNT, 27 William Street, New York City, N. Y., are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted ".

It is to be noted that the defendants undertook to submit, at the request of the insured, to any court of competent jurisdiction in accordance with the law and practice of such court. It is to be noted further that no reference is made to the identity of the suitor, except in the phrase " in accordance with the law and practice of such court ". If there be any ambiguity, it will of course be resolved against Lloyds, as the scrivener and draftsman of the insurance contract. Lloyds has delivered a contract in this State to residents thereof, and this delivery must be construed to be within the contemplation of the decisional and statute law, particularly sections 59-a, 143 and 167 of the Insurance Law. The contract having been delivered, application of the pertinent statutes was thus invoked. The language of the policy provision, in itself, is broad enough to

embrace any suit by whatever suitor entitled to come within the protective meaning of the applicable statutes.

By way of narrow construction, the very language of the policy specifies its named attorneys as the persons upon whom process may be served and this relates to any suits on the policy by whomsoever brought, provided the appearance is requested by the insured. It may well be that the affidavit of the assured's officer (submitted in opposition to the motion) may be deemed such a request. If it be said that the assured is an insolvent corporation no longer engaged in business, that does not deprive its directors and officers of the right and duty to wind up its affairs (cf. General Corporation Law, § 29) any more than it precludes Lloyds from prosecuting (in the name and in behalf of the defunct-debtor-corporation-original-defendant-assured) the appeal from the judgment upon which this suit is grounded. It should be noted in passing, too, that while the plaintiffs may not be pursuing the cause of action accruing to the debtor corporation (the policyholder), yet they would perhaps be entitled as judgment creditors to the appointment of a receiver or trustee of the debtor (General Corporation Law, § 150) who could then bring suit against Lloyds upon the action belonging to the debtor as the policyholder, or at least give the claimed required insured's consent to the action by the injured persons. It is hardly to be supposed that the unmistakable statutory purpose heretofore discussed fell short of accomplishment by that narrow contractual area which would require resort to the device of receivership.

I hold that adequate basis exists to sustain the service upon the attorneys. If it were deemed otherwise a hearing could be directed on the issue as to whether there was — in the language of the policy — " request of the insured " that Lloyds submit to the jurisdiction of this court. I do not think that necessary in view of what appears (from the decision of the learned trial court in the negligence action) to be the familial relationship between the injured persons on the one hand and the personnel in control of the corporate assured on the other.

Both motions are accordingly denied. The defendants may appear generally within ten days after service of order with notice of entry. Orders signed.