**CLIFTON PRODUCTS, INC. (an Ohio Corporation), Plaintiff,**

v.

**AMERICAN UNIVERSAL INSURANCE CO., of Providence, Rhode Island, Defendant.**

United States District Court
S. D. New York.
Jan. 20, 1959.

Theodore L. White, New York City, for plaintiff.

Victor J. Herwitz, New York City, for defendant Benjamin R. Kaplan, New York City of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an action on two public liability insurance policies issued by defendant to plaintiff. Plaintiff is an Ohio corporation, defendant a Rhode Island insurance company. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

Defendant moves to quash service of process and to dismiss for lack of jurisdiction on the grounds that the defendant is not subject to service within the Southern District of New York, and was not properly served.

Service on the defendant insurance company was attempted on December 2, 1957 by delivering a copy of the summons to Interstate Motor Carriers Agency, an insurance brokerage firm at its office in New York City, and by mailing a copy of the summons to the defendant company at its office in Providence, Rhode Island. Plaintiff had its plant and principal place of business in Painesville, Ohio. It had no offices and concededly was not present or doing business in New York. Defendant had its principal place of business in Providence, Rhode Island. It claims that it was not present or doing business in New York.

In 1950 the plaintiff, Clifton Products, Inc., experienced difficulty in obtaining public liability insurance covering its operations as a manufacturer of beryllium products. In the spring of that year Rogin of the Interstate Motor Carriers Agency of New York City, insurance brokers, called on the plaintiff at its plant in Painesville, Ohio, to solicit its insurance business. Rogin conferred with Windecker, plaintiff's president, and dis-

cussed the possibility of placing the risk through his agency.

Thereafter Rogin corresponded with Windecker, discussions were had by telephone, and subsequent meetings were held in Boston, Massachusetts, while Windecker was attending sessions at the Massachusetts Institute of Technology, and at Interstate's offices in New York City.

As a result Interstate secured the business and placed the risk with the defendant, which then had its offices in Boston. The policy was issued on August 23, 1950 from defendant's then Boston office, and a renewal policy was issued on August 23, 1951.

The complaint is based on the defendant's refusal to defend three actions commenced against the plaintiff in Ohio and one claim arising out of an action against plaintiff's customer in Connecticut, which are alleged to be within the coverage of the policies, and defendant's failure to reimburse the plaintiff for losses arising directly from settlements or judgments paid by plaintiff on these claims.

Plaintiff seeks to uphold service by reliance alternatively on (1) the special provisions of Section 59-a of the Insurance Law of New York, McKinney's Consol.Laws, c. 28, or, if these be held inapplicable, on (2) the general law relative to acquiring in personam jurisdiction over foreign corporations in the federal courts.

### (1)

Section 59-a, subd. 2(c) of the Insurance Law of New York [1] provides that service of process upon a foreign insurance company may be effected by serving any person within this State

" * * * who, in this state on behalf of such insurer is (1) soliciting insurance, or (2) making, issuing or delivering any contract or insurance, or (3) collecting or receiving any premium, membership fee, assessment or other consideration for insurance; provided notice of such service and a copy of such process are sent within ten days thereafter, by or on behalf of the plaintiff to the defendant at the last known principal place of business of the defendant, by registered mail with return receipt requested * * *."

In purported compliance with this provision personal service was made upon Interstate Motor Carriers Agency in New York and, within ten days, a copy of the summons was sent by registered mail to the defendant insurance company in Providence, Rhode Island.

The defendant maintains service in this action cannot be made under Section 59-a since it protects New York residents only and plaintiff, an Ohio corporation, cannot avail itself of its provisions. It points to subdivision 1 of Section 59-a which provides:

"The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to

---

1. Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C. provides that service may be made upon a foreign corporation "if the summons and complaint are served in the manner prescribed * * * by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state".

protect its residents and to define, for the purpose of this section, what constitutes doing business in this state * * *."

This subsection makes it clear that the New York Legislature, exercising its regulatory power over insurance business conducted in the state for the benefit of New York residents, intended the benefits of the statute to be limited to insured New York residents only. It was concerned with the "often insuperable obstacle" facing New York residents of "resorting to distant forums for the purpose of asserting legal rights" under contracts insuring them in New York, solicited from them in New York by foreign insurance companies. No such considerations apply to insured nonresidents. The regulatory power of the state was plainly not exercised for their benefit and the statute does not apply to them. Indeed, except in the case of insured New York residents entitled to protection under the declared policy of their own state, service under the section would seem to be in violation of constitutional due process.

There are no reported New York cases which deal with the application of the statute to non-resident plaintiffs. However, Parmalee v. Iowa State Traveling Men's Ass'n, 5 Cir., 206 F.2d 518, 44 A.L.R.2d 410, and Parmalee v. Commercial Travelers Mut. Acc. Ass'n, 5 Cir., 206 F.2d 523, are decisive of the question. In the first Parmalee case the plaintiff widow, a Florida resident, as beneficiary of a certificate issued to her deceased husband who also resided there, brought suit in Florida against the defendant, a resident of Iowa who had no Florida offices. Jurisdiction was based upon the Florida Unauthorized Insurers Process Act, F.S.A. § 625.28 et seq. which is similar to Section 59-a of the New York Insurance Law, and which contains a provision nearly identical to Section 59-a, subd. 1. The court held that since the insurance certificate had been delivered in Florida to a resident of that state the statute could constitutionally confer jurisdiction over the foreign insurance company through service upon the Florida Insurance Commissioner and mailing of a copy by registered letter to defendant at its principal place of business in Iowa. The court was careful to point out that it construed "the legislation to apply only to policies of insurance delivered in Florida to Florida residents" and that the statute "evidences a plan which the Legislature could, and did, find was necessary for the protection of its residents who became insured in the manner referred to in the statute". 206 F.2d at page 522.

In the second Parmalee case the same plaintiff brought suit in Florida against another foreign insurer on a different certificate, and relied upon the same statute as the basis for jurisdiction over the defendant. The court held, that since the certificate had been delivered by mail to the assured in Kentucky at a time when he was a resident of that state, the requirement of delivery in Florida to a Florida resident had not been met and the statute did not operate to confer jurisdiction over the foreign insurer.

The reasoning of the Parmalee cases applies in the case at bar and it is clear that service upon the defendant here, in so far as it is based upon Section 59-a of the New York Insurance Law, cannot be sustained. The policy was delivered in Ohio to an Ohio resident. I follow the Parmalee cases and hold that Section 59-a protects only New York residents in suits based on policies delivered to them in this state.

This conclusion is consistent with McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, where service upon a foreign insurer under a similar California statute was upheld because the plaintiff was a California resident to whom the insurance policy in suit had been delivered in California who was entitled to the protection of this regulatory statute.

See, also, Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Ace Grain Co. v. American Eagle Fire Ins. Co., D.C.S.D.N.Y., 95 F.Supp. 784. Cf. Schutt

v. Commercial Travelers Mutual Accident Ass'n, 2 Cir., 229 F.2d 158, 160.[2]

(2)

The remaining question is whether, independently of Section 59-a, service upon Interstate in New York as the alleged agent of defendant conferred jurisdiction here over it.

In determining whether a corporation is amenable to process in a jurisdiction other than that in which it is incorporated the question has been alternatively posed in terms of whether the foreign corporation is "present" or is "doing business" in the state of the forum. These terms "are merely convenient phrases which serve largely for purposes of classification and discussion". Pickthall v. Anaconda Copper Mining Co., D.C.S.D.N.Y., 73 F.Supp. 694, 697.

Plaintiff argues that the corporate defendant is "doing business" in New York within the meaning of Section 1391(c) of Title 28 United States Code. But Section 1391(c) relates to venue and is not relevant on this motion which is addressed solely to the question of in personam jurisdiction. See Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788, certiorari denied 335 U.S. 814, 69 S.Ct. 32, 93 L.Ed. 369.

There is no general statutory guide to which the federal courts may look to determine whether a foreign corporation is amenable to process within the state in which the court is situated. Rules 4(d) (3) and 4(d) (7), F.R.C.P., merely provide the manner of service upon the foreign corporation. They do not tell us when the corporation is subject to such service.[3]

The standards that have been applied in determining whether a federal court has acquired in personam jurisdiction over a foreign corporation are largely the product of decision. Some of this law has been adopted from the states while some has federal origin.

In actions where plaintiff has attempted to effect service pursuant to Rule 4(d) (7), which permits service to be effected in accordance with the law of the state in which the district court sits, the courts have generally looked to state jurisdictional standards to determine whether the corporation is subject to service of process. Albritton v. General Factors Corp., 5 Cir., 201 F.2d 138; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179, certiorari denied 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362, but see Latimer v. S/A Industries Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, 186, certiorari denied 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531. Where an action has been removed to the federal court from a state court and a motion is made in the federal court which challenges in personam jurisdiction over the defendant, there, too, state law is applied in determining the question. Bomze v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33; Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137.

The case at bar, however, is an original action in the federal court based on diversity of citizenship. There is a wide divergence of judicial opinion as to the law to be applied where, in such an action, objection is made to in personam jurisdiction over the defendant. The majority view is that in such a case Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, requires the application of state law. Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541; Albritton v. General Factors Corp., supra; Canvas Fabricators, Inc. v. William E.

---

2. This is in accord with expressions contained in several New York decisions which indicate that § 59-a was intended to apply only where the contracts of insurance were delivered in New York to residents of that state. See Zacharakis v. Bunker Hill Mut. Ins. Co., 1st Dept., 281 App.Div. 487, 490, 120 N.Y.S. 2d 418; Peka, Inc. v. Kaye, 208 Misc. 1003, 1009–1010, 145 N.Y.S.2d 156, reversed on other grounds 1st Dept., 1 A.D.2d 879, 150 N.Y.S.2d 774; Kaye v. "Doe" (Lloyds of London), 204 Misc. 719, 723, 726–727, 125 N.Y.S.2d 135.

3. See Note, 69 Harvard L.Rev. 508; Hart and Wechsler, The Federal Courts and The Federal System (1953), p. 959.

Hooper & Sons Co., 7 Cir., 199 F.2d 485; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193.

This circuit, however, has declined to apply the Erie R. Co. v. Tompkins doctrine to this situation and has consistently held that federal law is determinative of whether a foreign corporation is amenable to service of process in a diversity action commenced in the federal courts. Anderson v. British Overseas Airways Corp., D.C.S.D.N.Y., 144 F. Supp. 543; Nugey v. Paul-Lewis Laboratories, D.C.S.D.N.Y., 132 F.Supp. 448; Satterfield v. Lehigh Valley Railroad Co., D.C.S.D.N.Y., 128 F.Supp. 669; General Electric Co. v. Masters Mail Order Co. of Washington, D.C.S.D.N.Y., 122 F.Supp. 797. See Latimer v. S/A Industries Reunidas F. Matarazzo, supra; French v. Gibbs Corp., 2 Cir., 189 F.2d 787.

It is unnecessary to trace the development of applicable federal law in detail. The concept of Bank of Augusta v. Earle, 13 Pet. 519, 10 L.Ed. 274, that a corporation can dwell only in the place of its creation and can have no existence outside that place has long since been rejected. The doctrine of "implied consent" which found favor in such cases as Lafayette Insurance Co. v. French, 18 How. 404, 15 L.Ed. 451, and which was developed to mitigate the harsh effects of the Earle doctrine has also come and gone. Then came the doctrine of "presence" whereby the test was said to be whether the corporation was doing business within the state in such manner as to warrant the inference that it was "present" there. Green v. Chicago, Burlington & Quincy Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading Railway Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710. This test was used not only as the test of personal jurisdiction over foreign corporations in suits in which the federal courts have original jurisdiction, Philadelphia & Reading Railway v. McKibbin, supra, Bank of America v. Whitney Cent. Nat. Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594, but was also used to define the permissible extent of state jurisdiction over foreign corporations under the due process clause of the Fourteenth Amendment. St. Louis Southwestern R. Co. of Texas v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486; Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372.

However, International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, which had been foreshadowed by Judge Learned Hand's opinion in Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 45 F.2d 139, established the present broad standards under which a state may, consistent with due process, assert in personam jurisdiction over a foreign corporation. International Shoe held that the defendant corporation must have "minimum contacts" with the state of the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'", and that "an 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection". The court said that where a corporation's activities are continuous and systematic and also give rise to the liabilities sued upon the corporation is "present" for purposes of service of process. On the other hand, where the activities consist of the casual presence or an isolated transaction of a corporate agent, this is not enough to subject the corporation to suit on a cause of action unconnected with those activities.

While the International Shoe case was concerned with the due process limitations on state jurisdiction over foreign corporations, in this circuit it has been applied to questions of in personam jurisdiction over foreign corporations in cases originating in the federal courts as well. See Latimer v. S/A Industrias Reunidas F. Matarazzo, supra; French v. Gibbs Corp., supra. See, also, Bach v. Friden Calculating Mach. Co., 6 Cir., 167 F.2d 679.

The concept of "presence" for purposes of due process and for purposes of federal jurisdiction has been held to be the

same and International Shoe and the cases that follow it govern the situation at bar.

Judge Learned Hand, in three opinions written subsequent to the International Shoe decision, has defined this concept of "presence" as follows:

1. The corporation must have been engaged in some local activities.

(a) They must be important enough to make it fair to the defendant for the suit to be tried locally.

(b) A relevant factor is whether the liability arose out of events occurring within the state of the forum.

2. An estimate must be made of the inconveniences which would result from requiring the corporation to defend in the forum.

(a) The factors involved in estimating such inconveniences are indistinguishable from those involved in determining forum non conveniens. See French v. Gibbs Corp., supra; Latimer v. S/A Industrias Reunidas F. Matarazzo, supra; Kilpatrick v. Texas & P. Ry. Co., supra.

It remains to apply these standards to the case at bar.

■ The facts as stated in the affidavits submitted by the parties are, with perhaps one exception, undisputed. The conflicts arise from the inferences and conclusions attempted to be drawn from them. Neither side has asked for a hearing. The motion may therefore be determined on the facts now before me.[4]

Defendant American Universal Insurance Company is a Rhode Island Corporation with its principal office located in that state and has no office in New York. Interstate Motor Carriers Agency is a resident of New York and has its offices in New York City. Plaintiff, Clifton Products, Inc., is an Ohio corporation and its principal place of business is located in that state. It has no connection whatsoever with New York.

In 1951 and 1952 at the time of the transactions which concern the insurance policies in suit Interstate was an independent insurance broker which solicited insurance business from prospective clients and placed the risks with whatever insurers seemed most suitable. Its income was derived from commissions on the premiums paid on the policies which it thus sold. As far as appears it had no formal agency agreement with the defendant and there was no formal designation of Interstate as defendant's agent. There was no display of defendant's name at Interstate's offices, no listing of defendant in the New York telephone book at that address or any other, there were no employees of defendant in Interstate's offices or anywhere in New York, Interstate was not authorized to do business there and there were none of the other usual indicia of defendant's presence in New York.

Interstate, in accordance with its usual solicitation practices, initiated conversations with plaintiff in an effort to obtain its insurance business. The initial call by Interstate's representative Rogin was made at plaintiff's plant in Painesville, Ohio. Further conversations between Interstate and plaintiff were had in Boston and in New York where plaintiff claims that the final arrangements for the initial coverage were made.

The date when Interstate placed the risk with defendant does not appear. However, the policy was accepted, executed and issued by the defendant at its Boston, Massachusetts, office. There is some doubt as to whether the initial policy was mailed directly to plaintiff from Boston or was first sent by defendant to the broker in New York and was forwarded by Interstate to the plaintiff. However, I will assume that the latter course was followed since it appears that the renewal policy was handled in this fashion.

After the first policy was issued Interstate billed the plaintiff for premiums on its own broker's billhead from its New York offices. Premium checks were made payable to and sent to Interstate there. Interstate deposited these checks

4. Cf. Monteiro v. San Nicolas, S.A., 2 Cir., 254 F.2d 514.

in its own New York bank account, deducted its commissions and forwarded its own checks to defendant at its head office for the balance of the premiums.

Interstate sent to plaintiff its own general broker's forms for reports of total payroll on which to calculate premiums. These forms were returned by plaintiff to Interstate in New York who in turn calculated and billed the premiums and forwarded the completed forms to the defendant after billing.

There was considerable correspondence between plaintiff in Ohio and Interstate in New York regarding details arising under the policies. Interstate's portion of the correspondence was all conducted on its own broker's letterhead. Some of the correspondence related to a claim which had arisen in Ohio under the policy and discussion with respect to this claim led to the cancellation by the plaintiff through Interstate of the renewal policy prior to its expiration. Interstate, at the request of plaintiff, also furnished proof of coverage to the Atomic Energy Commission, plaintiff's contractor.

Thus, all of plaintiff's contacts with respect to the policy were with Interstate in New York. Plaintiff claims that Interstate was the agent of defendant in New York for purposes of these policies at least and was therefore subject to service in this jurisdiction. The defendant, on the other hand, claims that these activities were carried on primarily for the benefit of the plaintiff for whom Interstate was acting as broker and that Interstate was not its agent in New York for any purpose.

 The position of an insurance broker vis-a-vis the insured and the insurer is a peculiar one. Ordinarily he is the agent of the insured and not the insurer. International Paper Co. v. General Fire Assurance Co., 2 Cir., 263 F. 363; Hesselberg v. Aetna Life Ins. Co., 8 Cir., 75 F.2d 490, certiorari denied 296 U.S. 623, 56 S.Ct. 144, 80 L.Ed. 442.

" * * * But in any given case the facts may show that the broker was acting for the insurer as well as for the insured. The facts of the case will always govern. Thus the broker may act for the insured in procuring the insurance, and so bind him by any concealments or misrepresentations made, and also act for the insurer in delivering the policy and settling for the premium, with reference to which the broker's acts will bind the insurer."

Vance on Insurance (3d Ed.) p. 443.

Thus an insurance broker has a "dual agency". Bohlinger v. Zanger, 306 N.Y. 228, 117 N.E.2d 338. See, also, Appleman Insurance Law & Practice, Vol. 16, § 8727; International Paper Co. v. General Fire Assurance Co., supra; New York Insurance Law, § 121.

Here, in some respects Interstate was acting as the representative of the insurer defendant—for example, in forwarding the policy and the cancellation of the policy to the plaintiff. In other respects (for example, in requesting the issuance of the policy and in furnishing proof of coverage to the Atomic Energy Commission) it was acting as the representative of the plaintiff insured, or at least performing services for the plaintiff rather than for the defendant. In still other respects Interstate's activities were primarily for its own benefit or on the border line.

 But the phases of these transactions on which Interstate in New York was acting as the defendant's representative were very limited. The question is whether such limited representation is sufficient to make the defendant "present" here for purposes of jurisdiction in this action by a foreign plaintiff.

I do not believe that there is sufficient to furnish a basis for jurisdiction. The liability did not arise out of the local activities conducted on defendant's behalf by Interstate in connection with these transactions.[5] The solicitation ini-

---

5. While McGee v. International Life Ins. Co., supra, upheld service under a California statute, West's Ann.Ins.Code, § 1610 et seq. similar to § 59-a of the New

tially took place in Ohio and was made not by defendant or on defendant's behalf but by Interstate as an independent broker. Assuming that the arrangements between the broker and his client, the insured, were finally agreed upon between them in New York, there is nothing to indicate that the broker was doing more than successfully concluding his independent solicitation of plaintiff's insurance business for his own profit and advantage.

Interstate then obtained coverage from defendant in Boston. The policy was issued there and was delivered to the plaintiff in Ohio. It is true that Interstate acted as defendant's representative in forwarding the policy and its renewal to the plaintiff in Ohio and perhaps in some other respects. But none of these were more than incidental and ministerial acts in which Interstate was acting as the point of contact or conduit between the parties in its "dual agency" capacity.

There is no showing here that the defendant carried on any continuous or systematic activities in New York. The casual "agency" of Interstate was limited to relatively minor phases of these isolated transactions.

These factors are not enough to subject the defendant to jurisdiction in this district. "An estimate of the inconveniences" which would result to the defendant from subjecting it to jurisdiction would not be in accord with "traditional notions of fair play and substantial justice". Defendant has no offices or staff here. Its connections with the jurisdiction are of a most ephemeral nature. The coverage under the policies was for activities carried on in Ohio. The claims which plaintiff asserts under the policies arose from events which took place in Ohio. It can make little, if any, difference to the plaintiff's convenience whether these questions are litigated here or in Rhode Island. However, the difference to defendant would be substantial.

This is pointed up when it is considered that an independent broker in any one of the forty-nine states might solicit insurance from a client and might place an isolated policy with the defendant in a special situation such as appears to have been involved here, after shopping around among a number of companies to get the terms and coverage which his client desired. It would scarcely be fair or just to require the defendant to defend suits brought by plaintiffs from an entirely different state wherever the independent broker through whom plaintiff elected to deal might have had his offices.

This is quite apart from the fact that plaintiff has failed to show that such limited connections as defendant may have had with this state in 1951 and 1952 when these transactions occurred still persisted five years later in 1957 when service was attempted to be made in the present action. Cf. French v. Gibbs Corp., supra; Electrical Equipment Co. v. Daniel Hamm Drayage Co., 8 Cir., 217 F.2d 656. It may be assumed that there were certainly no such activities with respect to this plaintiff for it surely would have said so if there had been. However, in view of the conclusion I have already reached, it is unnecessary to discuss this aspect of the matter.

I therefore hold that the attempted service upon the defendant was ineffective and this court acquired no jurisdiction over it. The motion to quash service is granted and the complaint is dismissed for want of jurisdiction.

Settle order on notice.

York Insurance Law, where the activity of the defendant in California was limited to the single transaction in suit, the plaintiff there was a resident of California, the policy had been delivered in California, and the suit arose out of a contract entered into in California.