JAMES ZACHARAKIS, Doing Business under the Name of WHITE MOUNTAIN HOTEL, Respondent, *v.* BUNKER HILL MUTUAL INSURANCE COMPANY, Appellant.

First Department, March 31, 1953.

*David A. Ticktin* of counsel (*Jacob Goodman* with him on the brief; *Powers Kaplan & Berger,* attorneys), for appellant, appearing specially.

*Gilbert Goldstein* of counsel (*Goldstein & Goldstein,* attorneys), for respondent.

BERGAN, J. Plaintiff is a resident of New York and in 1951 was the owner of a hotel at Brettonwood, New Hampshire. The defendant Bunker Hill Mutual Insurance Company is a Pennsylvania insurance carrier, incorporated in and a resident of that State. It is not authorized to do business in New York; and the record indicates that it has no office, mailing address,

agent or bank account here. There is proof that it has never "issued" an insurance policy "in" the State of New York.

In the summer of 1951, an insurance broker on behalf of plaintiff requested Arnold Chait, an excess line broker, to obtain certain fire insurance policies on the plaintiff's New Hampshire hotel. Chait had an office at 150 Broadway, New York. From his New York office he telephoned to the president of the corporate manager of the defendant carrier to inquire if it would issue insurance on the plaintiff's property.

This was followed by a written order, executed by Chait, describing the essential details of coverage sought. This order was placed in the mails in New York; it was received in Philadelphia by the defendant's manager. There was other correspondence between Chait and the defendant's agent, transmitted respectively through the mails between New York and Philadelphia, relating to the issuance of the policy ordered through Chait.

A policy was issued to the plaintiff by defendant for $20,000. The policy was placed in the mail in Philadelphia by the manager of the defendant, addressed to New York to the broker acting for plaintiff. A check for the premium was also sent by mail to defendant's manager and was there deposited to defendant's account.

A fire having occurred on September 19, 1951, a summons and complaint in this action against defendant was delivered on July 17, 1952, to the New York State Superintendent of Insurance, and was on that day forwarded by that officer by mail to defendant to its address in Pennsylvania. Defendant appeared specially in the action and moved at Special Term to vacate the service of process on the ground no personal jurisdiction had been obtained. Defendant contends that section 59-a of the Insurance Law, under which jurisdiction is claimed, is unconstitutional. The Special Term denied the motion to vacate process; it is from that order defendant appeals.

The statute in pursuance of which jurisdiction is asserted was added by chapter 826 of the Laws of 1949, and provides that the Superintendent of Insurance is appointed by an unauthorized or foreign insurer as its "true and lawful attorney" for the service of process in New York by the performance of any of certain enumerated acts "in this state".

The acts stated, to the extent that they are relevant here and which come expressly within the scope of the statute,

whether " effected by mail or otherwise ", are: the " delivery of contracts of insurance to residents of this state "; the " collection of premiums * * * for such contracts "; and " any other transaction of business ".

When the defendant mailed its contract of insurance issued to a resident of New York, addressed to a New York broker; when it collected a premium for this policy by mail, sent from New York; and when by its manager it entered into correspondence as to the terms and conditions of the policy moving by mail in and out of New York, it came literally, we think, within the terms of the statute by which it constituted the Superintendent of Insurance its agent to receive process.

It is said, however, that the statute seems operative only in a case where the acts of the insurer are plural and that the issuance of a single policy of insurance, which is all that is shown here, will not alone constitute the constructive designation of the agent in New York to receive process. The statute does utilize plural terms in referring to delivery of " contracts " to " residents " and the collection of " premiums " for " such contracts ".

But in its opening phrase it seems to make clear that the singular transaction is also to be swept within the effect of the plural words. It provides that " Any " of the " following acts " in the State " shall constitute " the statutory appointment. The word " Any " surely signifies, in the sense in which it is here used, a singular act falling within the categories stated in plural terms. This is, indeed, a rather common mode of legislative expression.

Practical difficulties stand in the way of a construction which would make the statute never operative unless the acts were plural. It would be only in a case where two or more policies were thus issued to a resident of New York that he could obtain jurisdiction by the statutory method. Or he might have to know that the same insurer had issued another policy in the same way to another resident of New York before he could safely deliver process to the superintendent. The Legislature could scarcely have intended this kind of a barrier, if attention is turned to the purposes of the section expressed in its first subdivision.

It is a usual method of construction to read plural legislative words to include the singular if this would be consistent with the statutory purpose. A rather good example is in the opinion of Mr. Justice BREWER delivered for the Circuit Court in 1887,

shortly before he went to the Supreme Court, in *State* v. *Kansas City, Ft. S. & G. R. Co.* (32 F. 722). The statute there construed provided that a refusal to comply with enumerated conditions which were stated in plural form subjected the offender to a penalty. It was argued that this meant that all of the conditions must be breached to justify the penalty, but it was held that the plural included the singular; and " that a disobedience of any one of these provisions " subjected the delinquent to the penalty. (P. 726.)

The general rule of construction is that " words in the plural number will be construed to include the singular " if this is consistent with the legislative intention (59 C. J., Statutes, § 586). Whatever weight can be lent to logic by authority has been attempted in the New York General Construction Law: " Words in the singular number include the plural, and in the plural number include the singular " (§ 35). We think, then that the case before us falls within the terms of the statute.

The statute accords defendant due process. At common law obtaining jurisdiction was scarcely distinguishable from the ability of judicial authority to exert force on the body of the defendant, and process was effected by the symbolic or actual exertion of the public force, which, of course, depended on his presence in the court's territory. The historic thesis was one often maintained by Mr. Justice Holmes, and is treated by him in *McDonald* v. *Mabee* (243 U. S. 90), one of the decisions discussed in the cases to which our attention has been directed.

The intentionally elusive personality of a corporation made it necessary that the force of public process be exerted on it by serving a vicar; the person served not being the party, but an officer or agent of the party. And in a federal union such as ours where transactions flow readily over State lines and thus into differing judicial areas, there has been built onto the service-by-vicar concept of jurisdiction over corporations, the evolutionary idea that certain acts of nonresidents within the jurisdiction constitute the constructive appointment of a vicar therein to receive the force of the service of process.

The effectiveness of this concept as it evolved was enhanced by providing that the constructive appointment of the agent should be directed to some always available and always receptive public officer. We might be willing to limit too radical an extension of the idea; but at this state of our legal development we are scarcely willing to turn our backs on it entirely. It has proved fair, useful and convenient, and is highly reciprocated among the States.

One of its best utilizations is the constructive appointment of a public officer to receive process when a man drives a motor vehicle over a State line into another jurisdiction. And it seems to us that in legal principle the difference is quite imperceptible between such a designation by operating a motor vehicle in and out of the State and a designation worked by mailing one's product or contract of insurance into the State, or by receiving from that State a premium for one's policy or by corresponding across the State line in relation to its issuance.

These acts all have tangible and measurable physical repercussions in the State in which the designation is deemed effected. The driver is under no compulsion to cross the State line with his vehicle; the insurance carrier is under no compulsion to send its policy into, or collect its premium from, the other State; and it is not unreasonable, or so it seems to us, that if these free acts having such physical repercussions are engaged in, they shall have the consequence of designation which the statute imposes.

The validity of constructive designation of a public officer to receive process by the operator of a vehicle in the act of driving on the highway of a State was accepted over twenty-five years ago by the Supreme Court in dealing with a Massachusetts statute (*Hess* v. *Pawloski,* 274 U. S. 352 [1927]), but there were some setbacks in its development, as in *Wuchter* v. *Pizzutti* (276 U. S. 13), where the court could not be reasonably sure under a New Jersey statute that the defendant would get notice of the suit.

The constitutionality of the New York statute (Vehicle and Traffic Law, § 52) has not been a troublesome question within the State. (*Shushereba* v. *Ames,* 255 N. Y. 490 [1931]; *Leighton* v. *Roper,* 300 N. Y. 436 [1950].)

By an emphasis on the right of a State to impose conditions on the use of a public highway as a basis for requiring a constructive designation, which is apparent in some of the older cases, it might be argued that this also sets the limitation of State power. But the regulation of insurance business is a State function as well as the maintenance of roads, and ideas about what is a proper area of action in which the constructive appointment will result cannot be kept still from one generation to the next.

A long step in the direction of sustaining the New York statute now before us seems to have been taken in *Travelers Health Assn.* v. *Virginia* (339 U. S. 643) decided in 1949. The

court there construed the act of the General Assembly of Virginia of 1928, as later amended, enacting the " Blue Sky Law " of that commonwealth. The appellant association was a Nebraska corporation and had its only corporate residence in Omaha. It was a nonprofit membership corporation conducting a mail order health insurance business.

Its transactions within Virginia were entirely through the mails from Nebraska. It had no agents, office or bank accounts in Virginia. Solicitation of new members was by mail from Nebraska. There were about 800 Virginia members; a number of claims had been paid from Nebraska by mail to Virginia.

The Virginia statute provided for a proceeding whereby certain activities in connection with the sales of certificates of insurance could be restrained by appropriate State authority. Before the order of restraint could be made, notice of a hearing on the merits was required to be given, and the statute said that where the offering for sale was by advertisement or solicitation by means of communication beyond the limits of the State, service of the notice could be made by registered mail.

The Travelers Health Association and its treasurer were served by the Virginia authority by registered mail in the proceeding and its jurisdictional power, based on this service was upheld by the Supreme Court of Appeals of Virginia (*Travelers Health Assn.* v. *Virginia,* 188 Va. 877). New York's Attorney-General appeared as one of *amici curiæ* in the United States Supreme Court in support of the validity of the Virginia statute.

The Supreme Court held the statute valid and that the appellant had due process. The decision essentially turned on the extent to which the appellant's activity by mail brought it within Virginia. It is true that the activities of the appellant were there shown to be multiple; but it scarcely can be doubted that a single clearly established transaction, or one each of two or more separate kinds of transactions related to the same contract, as in the case before us the payment of the premium and the negotiation back and forth as well as the issuance of the policy, would operate with equal force to confer jurisdiction. Quantity could not alone be the test of validity of a statute of this kind.

The Virginia case extended to activity within a State effected solely by mail a rule of jurisdiction that had been developing from more personal but at the same time quite transitory activity. This rule was already apparent in its development when the court in 1945 decided *Internat. Shoe Co.* v. *Washington*

(326 U. S. 310) which upheld the service by Washington authorities by mail on a corporation in Missouri of a notice of Washington unemployment compensation.

The New York statute now before us was held valid by the district court of the United States in 1951 in *Ace Grain Co.* v. *American Eagle Fire Ins. Co.* (95 F. Supp. 784) in an action removed to the district court from the State Supreme Court. Service of process was made on the defendant, a Pennsylvania corporation by service on the Superintendent of Insurance in pursuance of section 59-a. The carrier in that case did more in New York than the appellant here. It delivered the policy in New York; it had a New York address and telephone number which communicated with its own out of the State office and the plaintiff's claim was investigated in New York.

All this was regarded by the district court as evidence of the transaction of business within the statute. Appellants treat this case as though what the Judge stated in his opinion as grounds for bringing that insurer within the scope of the statute were indispensable criteria of statutory validity. The argument is pursued that the Judge's opinion must be read into the statutory language as a condition of validity.

The Judge was certainly not adding to the conditions under which the New York Legislature provided the statute was to be operative. What he was stating, merely, were the reasons why he felt the statute was operative under the facts in the case before him.

The issuance of fire insurance policies by foreign corporations to policyholders in this State, furnishing coverage for considerable intervals of time, " established such continuing relationships " as are stated to be a criterion in *Employers' Liability Assur. Corp.* v. *Lejeune* (189 F. 2d 521) one of the principal cases relied upon by appellant.

The order should be affirmed, with $20 costs and disbursements.

Dore, J. P. (dissenting). Plaintiff, insured, sues defendant, a Pennsylvania insurance company not authorized to do business in the State of New York, on a contract of fire insurance covering property located in the State of New Hampshire. Service of process in the action was made on the New York Superintendent of Insurance and on defendant by registered mail addressed to and received by it in Pennsylvania pursuant to section 59-a of the New York Insurance Law. The issue is whether Special Term properly denied defendant's motion to

vacate such service and dismiss the complaint on the ground that the court thereby had gained no jurisdiction of defendant in personam.

To protect residents of this State who hold policies of insurance issued by foreign insurers unauthorized to do business in the State, section 59-a of the Insurance Law provides for substituted service of process on such insurers if they effect in this State any of certain enumerated " acts "; e.g., delivery of insurance contracts by mail or otherwise to residents of this State; solicitation of applications for such contracts; collection of premiums or any other transaction of business in this State.

In our opinion when the facts disclosed bring the suit within the terms of section 59-a, that section provides a proper and legal method of substituted service of process upon an unauthorized foreign insurer and is not in violation of due process or otherwise unconstitutional. Similar statutes have been sustained when the facts establish that the foreign corporation had certain minimum contacts with the State in question such that the maintenance of the suit did not offend traditional notions of fair play and substantial justice (*Travelers Health Assn.* v. *Virginia,* 339 U. S. 643; *Internat. Shoe Co.* v. *Washington,* 326 U. S. 310; *Ace Grain Co.* v. *American Eagle Fire Ins. Co.,* 95 F. Supp. 784, 785–786). Thus in the *Travelers* case (*supra*) the facts established that the foreign association there in question, did not engage in mere isolated or short lived transactions, but its insurance certificates were systematically and widely delivered in Virginia following solicitations based on recommendations of Virginians and it caused claims to be investigated in Virginia. In the *International Shoe Co.* case (*supra*) the court pointed out that the activities of the foreign corporation in the State of Washington were neither irregular nor casual and resulted in a large volume of interstate commerce. In the *Ace Grain Company* case (*supra*) the court found that the foreign insurer had a telephone listing and an address at 44 Wall Street where it had maintained its office while authorized to do business, and by calling the New York number one could be connected to the defendant's Philadelphia office at the rate of a local New York call; it had a " settling " agent in New York to whom the proof of loss was delivered and who on behalf of the insurer denied liability; two contracts were delivered in New York; premiums were paid in New York, and the defendant had continued to do business in New York through two controlled corporations up to September 6, 1949.

In contrast with the facts shown in the above-cited cases sustaining process, the only facts established in this record are (1) delivery of a single fire insurance contract of defendant by mail in New York to plaintiff, a resident here through plaintiff's broker, and (2) payment of a single premium to the broker here, transmission by him to defendant in Philadelphia and deposit of check by defendant in payment of the premium.

The ultimate and narrow issue before us therefore is: are such " acts " sufficient to bring this case within section 59-a? Scrutiny of section 59-a indicates in paragraph (a) of subdivision 2 that any of the following " acts in this state ", effected by mail or otherwise, subject the unauthorized foreign insurer to process:

(1) delivery of contracts of insurance to residents.

(2) solicitation of applications for such contracts.

(3) collection of premiums, fees, assessments or other considerations for such contracts; or

(4) any other transaction of business.   (Italics ours.)

In the plural are the references to contracts, premiums, fees and solicitations and accordingly (4) referring to any " other transaction " must be read in *pari materia* and in its context of plurals was not intended to refer to a single isolated transaction such as is shown in this record.

The conclusory statement in a reply affidavit of an attorney for plaintiff that inspection of statements filed with the Superintendent of Insurance of Pennsylvania reveals that in the calendar year 1951, five companies, including this defendant, delivered by mail policies in substantial sums to numerous States including New York, states nothing to show what policies, if any, in addition to the one in question, were transmitted by mail in New York by this defendant and there is no proof of solicitation in New York.   On the contrary in this case an excess line broker acting for the insured solicited the policy by mail from defendant in Philadelphia pursuant to restrictions imposed on such broker by subdivision 6 of section 122 of the Insurance Law, which provides that the insured and the broker must show they were unable after diligent effort to procure from any *authorized* insurer or insurers the full amount of insurance required to protect the interest of such insured before a policy of insurance can be lawfully procured from an outside insurer not authorized to transact business in this State.

*Shushereba* v. *Ames* (255 N. Y. 490) and *Leighton* v. *Roper* (300 N. Y. 436) holding section 52 of the Vehicle and Traffic

Law constitutional are limited by the rule that the State's power to regulate the use of its highways extends to their use by nonresidents as well as by residents; and, in advance of the operation of a motor vehicle on its highways by a nonresident, the State may require him to appoint one of its officials as his agent on whom process may be served in accidents growing out of such use. It is recognized in such cases that the State has power to exclude a nonresident until the formal appointment is made and having the power so to exclude the court may declare that the use of the highways by the nonresident is the equivalent of the appointment of the Secretary of State upon whom process may be served (*Leighton* v. *Roper, supra*). Then, too, in cases arising under section 52, the cause of action arose in this State and the person causing the injury had given an irrevocable consent in consideration of the privilege of using our highways which the State might otherwise have denied him. He and his auto are here and actually involved here in an accident that is claimed to have caused loss and injury here. Of course, no such state of facts or anything like it is herein disclosed. The foreign insurer is not here; it issued its policy from Pennsylvania covering a hotel in New Hampshire. That it issued the policy to a resident of the State of New York was not against the laws of the State of New York which had provided a means whereby *foreign* unauthorized insurers could issue policies to New York residents without being authorized to do business here (Insurance Law, § 122). Any construction that section 59-a applies to a single transaction between a resident and a foreign insurer, to that extent, would render the statute unconstitutional, for a State may not exercise jurisdiction and authority over persons without its territory, and " proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process ". (*Pennoyer* v. *Neff*, 95 U. S. 714, 733.)

The State has no power to regulate a single fire insurance transaction between a resident and a foreign unauthorized insurer not otherwise present in the State. In no cited case sustaining the process here in question are the " contracts " with the State so slim and so meagre and isolated as in the case before us. Absent here are the minimum factual requirements necessary to gain jurisdiction. Section 59-a is undoubtedly constitutional but plaintiff does not factually show that his suit is within its coverage.

Accordingly, we dissent and vote to reverse the order appealed from, vacate the service of process and dismiss the complaint.

BREITEL and VAN VOORHIS, JJ., concur with BERGAN, J.; DORE, J. P., dissents and votes to reverse in opinion, in which COHN, J., concurs.

Order affirmed, with $20 costs and disbursements to the respondent. [See *post,* p. 1019.]