**PARMALEE v. IOWA STATE TRAVELING MEN'S ASS'N.**

No. 14112.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1953.

---

Robert G. Young and T. J. Blackwell, Miami, Fla., for appellant.

D. P. S. Paul, Miami, Fla., Loftin, Anderson, Scott, McCarthy & Preston, Miami, Fla., for appellee Iowa State Traveling Men's Ass'n.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

Relying exclusively upon the provisions of the Florida Unauthorized Insurers Process Act, Florida Statutes, Sections 625.28 et seq., F.S.A., as basis for service upon, and jurisdiction of, the defendant, Mrs. Parmalee sued the Iowa State Traveling Men's Association to recover the death benefits claimed to have accrued to her as the beneficiary of a certificate issued to her husband, Maddox Parmalee, in 1950. Appellant, as was her husband, is a citizen of Florida. Appellee is domiciled in Iowa, and from there operates an insurance business by mail. The defendant moved to quash service and dismiss the suit upon the ground that it was not "doing business" in the State of Florida, had not appointed an agent upon whom to serve process in that State, and had been at no time subject to process in that State. Service had upon the Insurance Commissioner of the State of Florida in accordance with the terms of the Florida statute, supra, was especially attacked as a denial of due process of law and of equal protection of the law as prohibited by the Fourteenth Amendment to the Constitution of the United States. The trial court, upon a finding that the defendant "is not doing business in this state, and is not subject to service of process", ordered the action dismissed.[1]

Pertinent provisions of the Florida statute are set forth in the margin.[2] It provides that any unauthorized foreign insurer, which, among other things, effects by mail or otherwise the issuance or delivery

1. Upon motion for rehearing, the Court stated that its judgment "was not a judgment on the merits but was a dismissal solely upon the ground of insufficiency of service of process."

2. "625.29 Purpose of §§ 625.28–625.33. The purpose of §§ 625.28–625.33 is to subject certain insurers to the jurisdiction of courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts. The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered them in this state by insurers not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this statute, what constitutes doing business in this state, and also exercises powers and privileges available to the

of contracts of insurance to residents of Florida thereby appoints the Insurance Commissioner of Florida as its agent for service of process as to any action arising out of such contract of insurance. It was made to appear that the transactions between the parties with reference to the insurance contract were in all respects included within the terms of the statute in that the certificate was delivered in Florida to a resident of the State of Florida and each of the acts specified by the statute as subjecting the insurer to substituted process was done. Each detail was "effected by mail." It is likewise clear that the defendant association had no office and no property in Florida and no agents there soliciting business for it. Having obtained assured's name from a lawyers' directory, an application form for membership in the defendant association was mailed to him from its Iowa office. Upon its receipt and approval, a certificate of membership was mailed to Parmalee from the Iowa office of the association and received by him in Florida. Remittance for the membership fee of $2.00 was forwarded by Parmalee by mail and received at the Iowa office. He regularly received, through the United States mails at Miami, Florida, notices of assessments for membership dues from the appellee's Iowa office and as these were received the same were paid by the issuance of checks and the mailing of them to the Iowa office. After his death, the proof of death forms were received from, and thereafter mailed to, the defendant association, and receipt thereof was acknowledged, as was also a copy of a letter from a Florida physician relative to the death of the assured. Later the defendant association advised counsel for Mrs. Parmalee that her claim had been allowed and ordered paid under the limited liability provision of the contract and a draft in the amount of $500.-00 in payment thereof was forwarded. Except for proof that application for membership form had been forwarded by mail by the defendant association to others in Florida, the foregoing summarizes the extent of the defendant's contacts with the assured and his beneficiary and with the State of

state by virtue of public law 15, 79th Congress of the United States, chapter 20, 1st Sess., S. 340, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states.

"625.30 Service of process upon unauthorized insurer.

"(1) Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer: (a) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (b) the solicitation of applications for such contracts, (c) the collection of premiums, membership fees, assessments or other considerations for such contracts, or (d) any other transaction of the business of insurance, is equivalent to and shall constitute an appointment by such insurer of the insurance commissioner of this state and his successors in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer.

"(2) Such service of process shall be made by delivering to and leaving with the insurance commissioner or some person in apparent charge of his office two copies thereof and the payment to him of such fees as may be prescribed by law. The insurance commissioner shall forthwith mail by registered mail one of the copies of such process to the defendant at its last known principal place of business, and shall keep a record of all process so served upon him. Such service of process is sufficient, provided notice of such service and a copy of the process are sent within ten days thereafter by registered mail by plaintiff or plaintiff's attorney to the defendant at its last known principal place of business, and the defendant's receipt, or receipt issued by the post office with which the letter is registered, showing the name of the sender of the letter and the name and address of the person to whom the letter is addressed, and the affidavit of the plaintiff or plaintiff's attorney showing a compliance herewith are filed with the clerk of the court in which such action is pending on or before the date the defendant is required to appear, or within such further time as the court may allow."

Florida in connection with the insurance certificate sued upon. Since these, however, literally and completely comply with the terms of the Florida statute, the defendant finds itself forced to, and does, attack the statute's constitutionality as a denial of due process of law.[3]

The validity of the Florida statute which provides the subjection of the defendant to the jurisdiction of Florida courts is the substance of this case. We find that the statute is not subject to the constitutional infirmity urged against it.

During recent years the courts have evidenced a marked departure from the former resort to the fiction of "consent" evidenced or implied by concepts of "presence" of the corporation within the state. Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074; Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777; Travelers Health Ass'n v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154. The controlling weight sometimes given to the place of contracting or performance in determining the power of the state to regulate has likewise been disregarded. Other fairer standards, though these are far from perfect, have been developed and established. The basic question in such instances is one of due process, and "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum con-

tacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95. In the present case such a concept must be developed and formed in consideration of the rights provided and declared by the statute as to insurance contracts held by citizens of the state in the light of the end sought to be attained, that of securing adjudication of the assured's rights under contracts of insurance in the Florida courts. The business of insurance is clothed with a public interest and is subject to the regulating power of the state, German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011; LaTourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L. Ed. 362; "government has always had a special relation to insurance." Osborn v. Ozlin, supra, 310 U.S. 53, 60 S.Ct. 763. "[A] state has a legitimate interest in all insurance policies protecting its residents against risks, an interest which the state can protect even though the 'state action may have repercussions beyond state lines * * *.'" Travelers Health Ass'n v. Virginia, supra; Hoopeston Canning Co. v. Cullen, supra [339 U.S. 643, 70 S.Ct. 929].[4]

As pointed out in Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342, by the passage of the McCarran Act, 15 U.S.C. § 1011 et seq., Congress has given support to state

3. The basis of appellee's argument, of course, is that all of its business is transacted in Iowa and that its use of the mails was not the transaction of business in Florida.

4. "In Osborn v. Ozlin, 310 U.S. 53, 62, 60 S.Ct. 758, 761, 84 L.Ed. 1074, we recognized that a state has a legitimate interest in all insurance policies protecting its residents against risks, an interest which the state can protect even though the 'state action may have repercussions beyond state lines * * *.' And in Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 63 S.Ct. 602, 604, 605, 87 L.Ed. 777, we rejected the contention, based on the Benn case [Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573] among others, that a state's power to regulate

must be determined by a 'conceptualistic discussion of theories of the place of contracting or of performance.' Instead we accorded 'great weight' to the 'consequences' of the contractual obligations in the state where the insured resided and the 'degree of interest' that state had in seeing that those obligations were faithfully carried out. And in International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, this Court, after reviewing past cases, concluded: 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Travelers Health Ass'n v. Virginia, supra.

systems for regulating the business of insurance. It can not be disputed that Florida has the power, within constitutional bounds, to prescribe the terms upon which insurance may be placed and kept in force upon its residents. We are without the benefit of any decision of the Florida courts construing and applying the terms of the Florida statute here involved. We attempt no construction of the statute further than is necessary for the present decision. It seems clear, however, that as to policies held by residents of the state which are issued and delivered to them in the state by insurers not authorized to do business there, the Legislature in the exercise of its power to protect such residents, established and defined, for the purpose of the statute, what constitutes doing business in the state. We construe the legislation to apply only to policies of insurance delivered in Florida to Florida residents. Its provisions, which constitute the effecting of any of the acts mentioned as an appointment by the insurance company of the Insurance Commissioner of the state upon whom service may be perfected, is restricted to suits "arising out of any such contract of insurance". While the statute refers to "any of the following acts", we understand it to mean rather the doing of any of the prescribed acts from which results the issuance or delivery of a contract of insurance in the state. The force of the statute is directed to suits upon such contracts. However, for the purpose of Section 3 of the Act, providing for service upon persons in the state who perform any of such acts, each act may have a consequence of providing means for service of process, but then also only as to suits upon contracts delivered in Florida to Florida residents. However this may be, in the present case each and every requirement of the statute is met. As thus construed, the statute evidences a plan which the Legislature could, and did, find was necessary for the protection of its residents who became insured in the manner referred to in the statute. It is a declaration of the state's public policy that its residents should not be faced with "the often insuperable

obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies." The means adopted reasonably removes such obstacle and protects those for whom government has a legitimate concern. Subjection to process and jurisdiction directly relates to the accomplishment of the permissible legislative aim and is necessary to accomplish it. The statute evidences a valid exercise of a power of government and has a direct relation to that power. It in no wise offends "traditional notions of fair play and substantial justice." "An unauthorized foreign * * * insurer" is put on notice by the statute of the consequences of its acts. Such an insurer has no unlimited right to effect and maintain insurance contracts with Florida residents as it alone desires and without regard to a declared public policy which is reasonable in purpose and effect. The subject matter being the enforcement of insurance contracts received and paid for by its residents, the State Legislature was not bound by the incidents and extent of activities which in a different business might be necessary to constitute "doing business" within the state. As to contracts in which the state is so intimately concerned, it was within the legislative power to provide and establish its own definition of "doing business" by which the issuer of such contracts would be subjected to Florida jurisdiction in suits for enforcement of them.[5] This is not to say, of course, that the Florida Legislature can set up an arbitrary or fanciful test of "doing business." It is to say that the "minimum contacts" which the Legislature recognized, from which result the creation and continuance in existence of an insurance contract until it becomes a potential claim, are sufficient to authorize subjection to suit upon such contract. And even then, the nature and effects of the statute, and the basis for its constitutional validity, enjoin a construction no broader than necessary to effect the expressed public policy to subject unauthorized insurers who effect and continue insurance contracts delivered in Florida to Florida residents to suits in Florida which assert legal rights

---

5. Compare Hoopeston Canning Co. v. Cullen, supra, 318 U.S. at page 317, and notes 3 and 4, 63 S.Ct. at page 605.

under such policies. Furthermore, as a regulatory law it plainly can be given no effect which will impose, retroactively, the provisions of the statute upon unauthorized insurers having policies in force prior to the enactment of the statute. These distinctions are not hypothetical, but are substantial, in the proper application of the statute. They mark the line between due process and unauthorized state action. By noting them here, we shorten our discussion in a similar case by the appellant here against another insurer, Parmalee v. Commercial Travelers Mutual Accident Association of America, 5 Cir., 206 F.2d 523, wherein we have determined that the insurance contract in that case does not come within the terms of the Florida statute.

In the present case, however, the facts bring it within the provisions of the statute and subject the defendant to service of process which, when accomplished, rendered the defendant amenable to the jurisdiction of Florida courts.[6] Because of diversity of citizenship and the amount in controversy this jurisdiction rested in the federal court. That court could not properly quash the service of process and dismiss the complaint for lack of jurisdiction.

Judgment reversed.

---

6. Other courts have held to the same effect. Storey v. United Ins. Co., D.C., 64 F.Supp. 896; Ace Grain Co. v. American Eagle Fire Ins. Co., D.C., 95 F. Supp. 784; Zacharakis v. Bunker Hill Mut. Ins. Co., 1st Dept., 281 App.Div. 487, 120 N.Y.S.2d 418. See also White v. Indiana Travelers Assur. Co., La.App., 22 So.2d 137; Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193.