Henry A. Hudson, J.
This is a motion by defendant for summary judgment dismissing the complaint on the ground that the Pennsylvania judgment upon which the cause of action is based, is void and is not entitled to full faith and credit under section 1 of article IV of the Constitution of the United States for the reason that the Court of Common Pleas of Dauphin County in the Commonwealth of Pennsylvania, which granted it, had no jurisdiction over the defendant.
The cause of action alleged in the complaint is based upon a default judgment obtained by the plaintiff against the defendant November 15, 1950, in the Court of Common Pleas, of Dauphin County, Pennsylvania, a court of competent jurisdiction. The judgment was for $2,200 and was entered by confession. The defendant did not appear.
The judgment was obtained upon a policy of accident insurance written by defendant May 24,1921 upon the life of Charles W. Hardt, plaintiff’s intestate, who died February 4, 1949. The plaintiff was appointed executor of decedent’s estate February 24, 1949. Decedent had been a resident of Pennsylvania since the issuance of the policy by defendant in 1921.
The defendant is a domestic membership association organized in 1883. It is authorized to grant personal accident and health insurance protection to its members. Its home office is located in the city of Utica, New York and it has no office, agency, agent, bank account, real property or tangible or intangible personal property in any State other than the States of New York and Virginia. In addition it has no employee, solicitor, investigator, adjuster, or any other representative *212 located in the State of Pennsylvania. It has not applied for or obtained a license to do business in Pennsylvania. It has never voluntarily designated any individual within nor officer or official of the State of Pennsylvania as its agent upon whom the service of process might at any time be made.
The defendant asserts by affidavit the following procedure followed by it in the transaction of its business: “ if a resident of a foreign state desires to become a member of the defendant Association he obtains an application for membership, completes it and then mails it to the defendant Association addressed to its home office in Utica, New York. There the application is received and is acted upon by the defendant’s Board of Directors. If the application is favorably considered, the applicant is thereupon elected in Utica, New York, as a member of the defendant Association where an insurance contract in the nature of a certificate of membership providing for certain accident and/or health insurance benefits executed by defendant and issued to the new member is then mailed to him through the United States Post Office in Utica, New York, addressed to him at the address that he has instructed the Association to use. Notices of assessments to cover the cost of his insurance protection are mailed to the member from the Home office from time to time and the member mails remittances in payment thereof from his state of domicile to the Home office of the Association in Utica, New York.”
Under the terms of the policy of insurance in question, the plaintiff must give notice of death to the defendant, upon which the defendant shall within 15 days furnish the necessary forms for the filing of proof of loss by the beneficiary. The proof of loss must be filed within 90 days after the date of death. The defendant then has 60 days within which to pay the loss during which 60-day period no action can he instituted on the policy. Any action on the policy must be instituted within two years from the expiration of the 90-day period for the filing of proof of loss.
The plaintiff filed the necessary proof of loss within 90 days and commenced action thereon in Pennsylvania, September 14, 1949 by serving the complaint in assumpsit upon the Commissioner of Insurance of the State of Pennsylvania. It was claimed by the plaintiff that the commissioner was the duly constituted attorney of the defendant to accept service of process by reason of the “Unauthorized Insurers Process Act” adopted by the Pennsylvania Legislature and signed by the Governor May 20,1949 being Public Law 1491. The law did not become effective until September 1, 1949.
*213 It does not appear from the moving papers when the plaintiff filed proof of loss or when the defendant acted thereon and consequently for the purposes of this motion it cannot be said that some action was not taken by the defendant under the policy in question between September 1, 1949, the effective date of the statute, and September 14, 1949, the date upon which service of process was effected.
The proportions of the Pennsylvania “ Unauthorized Insurers Process Act ’ ’ relating to the designation of the Insurance Commissioner to receive process read as follows: “ Section 2. Service of process upon unauthorized insurer, (a) Any of the following acts in this State effected by mail or otherwise by an unauthorized insurer of another state or foreign government: (1) the issuance or delivery of contracts of insurance to residents of this State or to corporations authorized to do business therein; (2) the solicitation of applications for such contracts; (3) the collection of premiums, membership fees, assessments, or other considerations, for such contracts; or (4) any other transaction of insurance business, is equivalent to and shall constitute an appointment by such insurer of the Insurance Commissioner and his successor or successors in office to be its true and lawful attorney upon whom may be served all lawful process in any action, suit or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this State upon such insurer.”
The statute is substantially identical in form to similar statutes adopted by many States to provide a means of obtaining jurisdiction over those foreign insurance companies which maintain an office and own property only in the State of their incorporation but who do business almost if not entirely by mail, upon a national basis and who generally contend in the courts that they do business exclusively in the State of their incorporation and are not amendable to the laws or courts of any other State.
In New York an almost identical statute is provided as section 59-a of the Insurance Law.
The intention of the Legislature in passing these statutes is set forth in section 1005.1 of volume 40 of Pur don’s Pennsylvania Statutes Annotated in almost identical language to that contained in subdivision 1 of section 59-a of the Insurance Law. The Pennsylvania statute in this particular reads as follows: “ The purpose of this act is to subject certain insurers to the *214 jurisdiction of courts of this State in suits by or on behalf of insureds or beneficiaries under insurance contracts. The legislature declares that it is a subject of concern that many residents of this State hold policies of insurance issued or delivered in this State by insurers not authorized to do business in this State, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such State interest the Legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define for the purpose of this statute what constitutes doing business in this State, and also exercises powers and privileges available to the State by virtue of Public Law 15, 79th Congress of the United States, Chapter 20, first Sess. S. 340, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states. 1949, May 20, P. L. 1491, § 1.” The nature of the problem which this legislation is designed to correct is fully described and discussed by Judge Medina in Schutt v. Commercial Travelers Mut. Acc. Assn. of America (229 F. 2d 158, 159): “ The background is the mushroom growth of the mail order insurance business. Typically such companies maintain an office and own property only in the state where they are incorporated, but they insure risks in many states, sometimes on a nation-wide basis. They have no agents or solicitors. New business is secured through the efforts of old policyholders, or ‘ members ’, spurred on by offers of prizes and aided by advertisements and application blanks furnished by the company. The amounts of money involved are small, full coverage of $5,000 or $10,000, the various sums of accident, hospital and health coverage running from a few dollars up to a few thousand. Some of these details appear in the exhibits attached to the affidavits in this case. In any event, such has been the success of these companies and so clear is the hardship of requiring the assured or his beneficiaries to hire a lawyer to prosecute such small claims in a state far from the residence of the policy-holder, where the necessary witnesses are generally to be found, that several states have enacted legislation to protect their residents against the expense, inconvenience, and injustice which are found to exist where such claims are required to be prosecuted in far distant forums.” And at page 162, as follows: ‘‘ Few if any activities within a state touch the people so closely as do those of insurance companies. Here the defendant has hit upon a way of transacting its busi *215 ness which reduces its contacts with its policy-holders and its methods of obtaining new business to communications by mail. But the result is precisely what it would have been if salesmen rather than ‘ members ’ procured new customers and if agents went from house to house collecting premiums instead of the sending of notices and receiving remittances through the mail. And this is done year after year on a large scale, in a systematic and regular way. Doubtless large numbers of policies are issued in due course to residents of Tennessee each year, and these are administered and processed in due course, in addition to those already held by others. If there is any doubt about the extent of defendant’s mail order insurance business in Tennessee, plaintiffs should be afforded opportunity to amplify the proofs appearing in plaintiffs’ affidavits, which were submitted in opposition to a motion to dismiss, which was treated by the court as a motion for summary judgment, and granted. ’ ’
The plaintiff urges that the judgment of the Pennsylvania court is entitled to full faith and credit under section 1 of article IV of the Constitution of the United States.
The law on this question is well settled in Gustavus v. Dahlmer (98 Misc. 462, 469-470):
“Where reliance is placed on a foreign judgment rendered by a court of record and of general jurisdiction, the presumption is that such court had authority to render the judgment in question, and that the necessary jurisdiction was acquired properly and the party who denies the same must assume the burden of proof.
“ ‘ The presumption is that a court of general jurisdiction proceeded to judgment only after duly acquiring jurisdiction by the service of all notices actually necessary. * * * “ An inferior court shall, when questioned, show that it acted within its jurisdiction. Whereas in courts of general jurisdiction, jurisdiction is presumed until the contrary is shown. * * * A superior court of general jurisdiction, proceeding within the general scope of its powers, is presumed to act rightly. All intendments of law in such cases are in favor of its acts. It is presumed to have jurisdiction to give the judgments it renders until the contrary appears; and this presumption embraces jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. * * * When the record of a court of general jurisdiction discloses nothing in regard to the service of process or notice, and no evidence is given upon the subject, jurisdiction over the person will be presumed, because the record itself imports sufficient proof of jurisdiction without disclosing the different *216 steps by which, such jurisdiction was acquired. ’ Smith v. Central Trust Co., 154 N. Y. 340, 341.”
‘ ‘ Every presumption is in favor of the jurisdiction of the court. The record is prima facie evidence of it and will be held conclusive until clearly and explicitly disproved. Shumway v. Stillman, 4 Cow. 292-296.” (See, also, Pringle v. Woolworth, 90 N. Y. 502; Johnston v. Mutual Reserve Life Ins. Co., 43 Misc. 251, affd. 104 App. Div. 550.)
However, the presumption of jurisdiction and the resultant validity of the judgment is subject to judicial inquiry in our courts. (Gustavus v. Dahlmer, supra; Hunt v. Hunt, 72 N. Y. 217; Berkman v. Ann Lewis Shops, 142 F. Supp. 417 [U. S. Hist. Ct., S. D. N. Y., 1956].)
In the last cited case, the court stated at pages 419-420: 11 Ordinarily, of course, the judgment of a court of another state is entitled to full faith and credit in every Court within the United States as it has by law or usage in the state in which it was rendered. 29 U. S. C., § 1738. However, in a suit upon the judgment of another state, the jurisdiction of the Court which rendered it is still open to judicial inquiry and when the matter of fact or law on which jurisdiction depends was not litigated in the original suit, it is a matter to be adjudicated in the suit founded upon the judgment. Adam v. Saenger, 1938, 303 U. S. 59, 62, 58 S. Ct. 454, 82 L. Ed. 649.”
The principal ground relied upon by the defendant for a dismissal of the complaint is that the plaintiff did not obtain jurisdiction over the defendant through service of process upon the Commissioner of Insurance and that consequently the judgment based thereon is void.
The defendant urg'es that the ‘ ‘ Unauthorized Insurers Process Act ” {supra) did not become effective until September 1, 1949 and that inasmuch as the plaintiff’s intestate died February 4, 1949, plaintiff had three months thereafter to file proofs of claim after which the plaintiff’s cause of action accrued in 60 days. The defendant contends that the cause of action accrued, therefore, in July and that consequently the statute does not apply as its effect cannot be made retroactive without violating the due process clause of the Constitution. There is considerable authority substantiating this contention generally.
In considering section 59-a of the Insurance Law of the State of New- York, which is very similar in wording and intent to the Pennsylvania statute, the courts have held that its effect cannot be made retroactive.
*217 In Piscina v. City of New York (198 Misc. 315, 317) the court stated: ‘ ‘ Granting that it is within the legislative power to impose terms upon which a foreign insurance corporation may-do business here (see Hess v. Pawloski, 274 U. S. 352), I think such terms can be imposed only as to acts done and insurance written subsequent to the enactment. Logical contention cannot be made that such an insurer, by doing the acts specified, is to be considered as having indicated an agreement in advance to accept something* of which it could not at the time have been apprised, of which it had no knowledge, and which was not even in existence. ’ ’
In Maranz v. American Std. Ins. Corp. (106 N. Y. S. 2d 694-695) the court stated:
‘ ‘ Plaintiff now brings this action alleging that the release was invalid because the company acted unconscionably. It is obvious that no affirmative acts concerning this policy were taken after June 4, 1948. It is likewise undisputed that the defendant is a foreign corporation and has never done business in Now York. Since the defendant is a foreign corporation, service of a summons could only be made pursuant to § 59-a of the Insurance Law, which created a method of substituted service on unauthorized foreign insurers, effective July 1, 1949.
‘ ‘ In view of the fact that every act done by the defendant with relation to plaintiff’s insurance contract occurred on or before June 4, 1948, service upon defendant must be vacated unless the statute, enacted in 1949, is to be given retroactive effect. The general rule is, however, that statutes are to be construed as prospective only. Kurland v. Chernobil, 260 N. Y. 254, 183 N. E. 380.”
In considering the application of the provisions for constructive service contained in section 52 and 52-a of the Vehicle and Traffic Law, the Court of Appeals held in Kurland v. Chernobil (260 N. Y. 254, supra) that the operation of a car on the highways by a resident, who removed from the State before the enactment of the statute, could not be considered as a designation by him of the Secretary of State under the newly enacted statute. The court stated at page 257: ‘ ‘ Section 52-a must, therefore, be held to operate only prospectively and to relate exclusively to those who as residents use the highways of this State subsequent to the passage of the act and who later become nonresidents.”
The Court of Appeals in considering* the effect of section 52 of the Vehicle and Traffic Law in Gruber v. Wilson (276 N. Y. 135), a case of a nonresident motorist involved in an accident in the city of Yonkers, New York, held that where the accident *218 occurred prior to the effective date of a statute which gave authority for the service of process upon the Secretary of State out of the City Court of the City of Yonkers upon a nonresident, such service was not effective because the statute was not retroactive and did not give jurisdiction to the City Court of Yonkers in the case of an action involving an accident occurring before the effective date of the statute. The court pointed out that the words of the statute are particularly significant in this respect, at page 140: “ ‘ And such operation shall be deemed a signification of his agreement that any such summons against him which is so served shall be of the same legal force and validity as if served on him personally within the State, ’ * * * ‘ and within the territorial jurisdiction of the court from which the summons issues. ’ ” It will be noted in reference to section 52 that the wording of the statute indicates that the act of the nonresident operator in driving his car is the factor which operates at the appointment of the Secretary of State.
The language of section 59-a of the Insurance Law is particularly significant in my opinion because it is in fact almost identical with that of the Pennsylvania statute. Paragraph (a) of subdivision 2 reads in part as follows: ‘ ‘ Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer * * * is equivalent to and shall constitute an appointment by such insurer of the superintendent and his successor in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement (Italics supplied.)
Subdivision (a) of section 2 of the Pennsylvania statute reads as follows: ‘ ‘ Any of the following acts in this State effected by mail or otherwise by an unauthorized insurer of another state or foreign government * * * is equivalent to and shall constitute an appointment by such insurer of the Insurance Commissioner and his successor or successors in office to be its true and lawful attorney upon whom may be served all lawful process in any action, suit or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement ”. (Emphasis supplied.)
The subject is discussed in volume 72 of Corpus Juris Secundum, at page 1065, in the following language: “A statute providing that certain nonresidents who do business or perform work in the state shall be deemed to have appointed *219 the secretary of state as agent to receive process in any action arising out of such doing of business or performance of work is unconstitutional if, or to the extent that, it is made retroactive.” (Citing Gillioz v. Kincannon, 213 Ark. 1010; Wein v. Crockett, 113 Utah 301.) In the latter case, the court held: The statute providing that when a nonresident conducts a business within the State by an agent, nonresident may be sued on any action arising out of conduct of such business, and summons may be served on nonresident or on agent, was not unconstitutional as to particular nonresident who entered into a contract with a resident prior to the effective date of the statute, where nonresident continued to transact business within the State after the act took effect and the alleged breach of contract on which the nonresident was sued took place after the act went into effect.
In Parmalee v. Iowa State Traveling Men’s Assn. (206 F. 2d 518) the court in considering a situation involving a policy of insurance delivered in the same manner as in the instant case, except that it was delivered after the effective date of the statute, held that the statute was constitutional and the service of process good. As to the retroactive effect of the statute, however, the court stated at page 523: ‘ ‘ Furthermore, as a regulatory law it plainly can be given no effect which will impose, retroactively, the provisions of the statute upon unauthorized insurers having policies in force prior to the enactment of the statute. These distinctions are not hypothetical, but are substantial, in the proper application of the statute. They mark the line between due process and unauthorized state action.” This is a very late decision (August 6,1953). It was followed in the United States District Court for the Northern District of New York by Judge Bbexuait in Schutt v. Commercial Travelers Mut. Acc. Assn. of America, which has not been reported. This case involved the same defendant as here, under the Tennessee statute. This statute is not in the same general language as the Florida, Pennsylvania or New York statutes, which are drafted along the lines of the uniform “ Unauthorized Insurers Process Act ”. On appeal, the Circuit Court of Appeals for the Second Circuit reversed the District Judge and held the Tennessee statute was applicable to policies delivered outside the State prior to the passage of the act. (Schutt v. Commercial Travelers Mut. Acc. Assn. of America, 229 F. 2d 158.)
The policy in the Schutt case was issued to the insured in 1942. The Tennessee statute became effective in 1947. The action was instituted on the policy after the assured’s death *220 in October, 1950. Judge Medina in Ms opinion, states at page 160:
“ We are concerned here with a statute of the Tennessee Code, Sections 6459.48, 6459.49, 6459.51 and 6459.53, Chapter 119 of the Public Acts of Tennessee of 1947, hereinafter discussed.
“The defendant, a New York membership corporation, had no property, office or employees in Tennessee. The policy was issued to the deceased in 1942, when he resided in Winchester, Kentucky. According to the terms of the contract, it is agreed that it ‘ is for all purposes deemed to be executed, issued and delivered within * * * the State of New York.’ Prior to 1947 the decedent moved to Tennessee, where he was domiciled at the time of Ms death. The activities of defendant in Tennessee were: the usual solicitation of new business by ‘ members ’, with prizes, advertising matter and application blanks; notices of assessments or premiums due, sent regularly through the mails to decedent and to other policy-holders and received by him and by others at their Tennessee homes; acceptance of remittances for assessments or premiums mailed in Tennessee; and the mailing of proofs of loss in Tennessee and the presence of an investigator of defendant on the premises after the fire.
‘ ‘ Service of process in the Tennessee state case was made on the Commissioner of Insurance, who forwarded the papers promptly to defendant in Utica, New York. But defendant took the position that it had never transacted any business in Tennessee, had no representatives there and had never designated the Commissioner of Insurance to accept service in its behalf. A decree pro confessa followed in due course, and it included, in accordance with Tennessee law, ‘ additional costs and expenses in the sum of $2500.00 arising directly out of defendant’s refusal in bad faith to pay its obligation under said policy. ’
“ The court below, citing Parmalee v. Iowa State Traveling Men’s Association, 5 Cir., 206 F. 2d 518, 519, 44 A. L. R. 2d 410 and Parmalee v. Commercial Travelers, 5 Cir., 206 F. 2d 523, held that it was not necessary to consider the constitutional questions of due process and full faith and credit, as it construed the Tennessee statute as having no application ‘ to a certificate of insurance delivered outside the State, and prior to the passage of the statute. ’
“Did the court below construe the statute correctly? We think not. ’ ’
And at page 162: “We think a fair balancing of the inconvenience discloses a situation which is unduly burdensome and *221 in a high degree unjust to the holders of defendant’s policies and that consequently the legislation in question does not run counter to the due process clause of the Constitution.”
While it is true that the Schutt case (supra) involves a policy of insurance which became payable after the effective date of the statute, it also involved a policy which was written before and was in force on the effective date of the statute. The language of the Circuit Court’s decision indicates that a statute such as the ‘ ‘ Unauthorized Insurers Process Act ’ ’ dealt with a public problem of such importance and magnitude to the individual policyholder that it is unduly burdensome and to a high degree unjust to such policyholders if the type of legislation involved in such acts is considered to run counter to the due process clause of the Constitution.
A most interesting discussion of this question arose in Zacharakis v. Bunker Hill Mut. Ins. Co. (281 App. Div. 487). This case was decided in March, 1953, in the First Department. It involved an interpretation of section 59-a of the Insurance Law, the New York “ Unauthorized Insurers Service of Process Act ’ ’, and specifically the determination of whether or not a single policy of fire- insurance issued by a foreign insurance company unauthorized to do business in the State of New York, to a resident of New York State insuring property in the State of New Hampshire should be a sufficient act within the meaning of section 59-a to designate the Superintendent of Insurance as the company’s agent to receive process in an action by the assured in New York against it. The policy in question was the only insurance policy issued in New York by this foreign insurance company. The court held that even though the words of the statute were plural, they should be read as well in the singular and that the one act of the foreign insurance company in issuing the policy and delivering it by mail in New York was sufficient to bring the company within the provisions of section 59-a. The decision itself is not particularly material to the determination of the instant case but the language of the court as to the problem facing residents doing business with foreign corporations and particularly foreign insurance corporations seems to me to establish that courts today recognize that the due process clause of the Constitution is not being jeopardized or violated so long as the foreign company affected has certain minimum contacts within the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. This is the principle laid down in Travelers Health Assn. v. Virginia (339 U. S. 643) and International Shoe Co. v. Wash *222 ington (326 U. S. 310). It is the principle followed by Judge Medina in the Schutt case (supra) and also pointed out by him as impairing almost to the vanishing point the authority of Minnesota Assn. v. Benn (261 U. S. 140). The Benn ease is strongly relied upon by the defendant in the present action.
In my opinion the justice in and the reasonableness of this approach to the legislative intent and the constitutionality of the various “ Unauthorized Insurers Process Acts ” insofar as they relate to policies which were in force at the time that such acts became effective in any particular State, is illustrated by the situation presented to the assured in the case here under consideration. The defendant issued a policy of insurance to the plaintiff’s intestate in 1921 in the State of Pennsylvania. In accordance with its policy of doing business, the application was furnished through an association member in Pennsylvania. All of the dealings between the parties were by mail. The policy specifically stated that for all purposes, it was deemed to be executed, issued and delivered within and was to be construed only in accordance with the laws of the State of New York. During his lifetime the assured was billed for premiums, the amount of which was fixed by an assessment provided for under the policy. In January, 1945 for some reason which does not appear, a new policy was issued by the defendant at Utica, New York and presumably mailed to the insured in Pennsylvania. Correspondence took place between the parties as a change of beneficiary was arranged for in 1946. Presumably assessments were billed to the assured and were paid by him until his death in February, 1949. The policy contains a provision that upon the failure of the policyholder to pay any assessment within 45 days of the date of the mailing of notice of assessment to Tn-m., the policy and all benefits thereunder automatically terminated and were cancelled. Provision is also made in the policy of 1945 in paragraph 16 of the standard provisions thereof that the defendant at any time could terminate the membership of the assured and cancel the certificate merely by giving a written notice by mail accompanied by the defendant’s check for $4. Such termination and cancellation would take effect at the time of the mailing of the notice. Thereupon, without any further action, the policy of the assured would be terminated except as to a claim originating prior thereto.
As previously stated, the plaintiff had 90 days. after the death of the assured in February, 1949 to file proof of loss and he was then compelled to wait 60 days before bringing *223 an action. Under the terms of the policy he had two years thereafter in which to bring suit. If the policy waiting period of 150 days were used, the plaintiff’s right of action would have accrued in July, 1949. The Pennsylvania “ Unauthorized Insurers Process Act ” was passed in May, 1949 but did not become effective until September 1, 1949. The defendant refused payment under the policy. As I have previously pointed out the date plaintiff’s cause of action actually accrued does not appear from any of the papers submitted on this motion. If it accrued after September 1 and before the action was instituted September 14, 1949, it would in my opinion constitute a transaction of business within the meaning of the Pennsylvania “ Unauthorized Insurers Process Act”. If the act of the defendant in refusing payment on the policy occurred before September 1, the plaintiff’s rights under the terms of the policy to proceed by action to collect thereunder continued in full force and effect for two years from the date of the filing of proof of loss. The wording of the statute likewise, in my opinion, implies that effect be given not only to the acts of the insurance company but also to the acts of the assured. It will be remembered that all business dealings in connection with the contract are accomplished by mail. The statute provides that the solicitation of applications, the collection of premiums, membership fees, assessments, or other considerations or any other transaction of insurance business in respect to the particular policy is equivalent to and shall constitute the appointment of the insurance commissioner as attorney upon whom lawful process may be served in any action arising out of such contract of insurance. Clearly the application can only be received by the company after being sent from Pennsylvania by mail by the assured. Premiums and assessments can only be received by the company if mailed. Notice of death and proof of claim can only be received if forwarded by mail from Pennsylvania. It follows that every act in relation to the conduct of the insurance business arising out of the policy in question requires reciprocating action between the company and the assured. This would include the participation of the company under the terms of the policy, whether the same involves its original issue, its maintenance in force through the collection of premiums and assessments, its ultimate payment after proof of loss and the processing thereof by the company, any investigation by the company in Pennsylvania through agents or by mail, the payment or refusal of payment of the contract and finally in the event of refusal of payment, the further action taken on behalf of the assured *224 under the provisions of the contract. All of such acts in my opinion, constitute “ transactions of insurance business ” within the meaning of the Pennsylvania ‘ ‘ Unauthorized Insurers Process Act ”. In other words, as long as a policy of insurance remains in force so that the rights of either party to the insurance contract can be enforced after the effective date of the “Unauthorized Insurers Process Act ” such circumstance is sufficient to bring the policy within the effect of the statute. Schutt v. Commercial Travelers Mut. Acc. Assn., (229 F. 2d 158, supra) is, in my opinion, authority that a policy delivered before the effective date of the statute comes within the provisions of the statute as long as some act authorized by the insurance contract takes place after the statute became effective. I consider this decision binding upon me.
In Piscina v. City of New York (198 MisC. 315, 317, supra) the court seems to have implied its approval in the language quoted above: “ I think such terms can be imposed only as to acts done and insurance written subsequent to the enactment.” (Italics supplied.)
In Baker v. Commercial Travelers Mut. Acc. Assn. (150 F. Supp. 725, 726), Chief Judge Holland, on a motion to quash service of the complaint upon the insurance commissioner under the Florida ‘ ‘ Unauthorized Insurers Process Act ’ ’, likewise so infers in the following language: ‘ ‘ The insured was not a resident of Florida at the time of the application and issuance of the policy in controversy, and there had been no communications or transactons by way of payment of premiums or otherwise between the insured, Baker, and the /defendant during the short period of time the insured had resided in Florida prior to his death.” (Italics supplied.)
Maranz v. American Std. Ins. Corp. (106 N. Y. S. 2d 694, supra) is distinguishable for the reason that no action was taken under the policy for a period of a year prior to the effective date of the statute. In the Marans case, the court intimates the general rule to be that the statute should not be given a retroactive effect, citing Kurland v. Chernobil (260 N. Y. 254, supra).
The Kurland case and others relating to the retroactive effect of sections 52 and 52-a of the Vehicle and Traffic Law cover a very different type of act effectuating the designation of a State officer as attorney upon whom process can be served. • Under the Vehicle and Traffic Law the act accomplishing the appointment is the operation of an automobile by a nonresident upon the highways of the State of New York. As soon *225 as the operator leaves the State without having committed any act which would justify the service of process on the designated State officer, the designation would cease and would not again be accomplished until the nonresident again enters the State and uses the State highway. The mail order insurance business is a very different transaction. It is in effect the carrying on of a continuing contract. The original contract would under the terms of the policy itself, be terminated at any time by the failure of the assured to pay the premium or assessment. As a result the policy is in effect reissued each year as a result of the payment of the premium or assessment. In the case here under consideration the original policy was issued in 1921. How many new polices were issued does not appear but at least we do know that one was issued in January, 1945. Since the effective date of the statute in Pennsylvania, namely, September 1, 1949, the issuance of a policy of insurance, each payment of a premium or assessment and any correspondence between the parties to the contract of insurance, in respect to the enforcement of material rights thereunder would, in my opinion, be a designation of the Insurance Commissioner as agent to receive process.
It certainly cannot be argued that the Insurance Commissioner of Pennsylvania must be designated as agent to receive process more than once upon a policy issued after the effective date of the statute, as long as it remains in force.
The very words of the statute itself indicate that the Legislature intended to include within the effect of the statute not only all new insurance business written but also any old insurance business then in effect which was continued after the effective date of the statute. If this were not so, there would have been no necessity for including any other acts than those specified under section 59-a (subd. 2, par. [a], els. [1], [2]) of the Insurance Law. Indeed an examination of the preamble, section 1 of the Pennsylvania 1 ‘ Unauthorized Insurers Process Act ” makes this clear in specific language: “ The legislature declares that it is a subject of concern that many residents of this State hold policies of insurance issued or delivered in this State by insurers not authorized to do business in this State, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for asserting legal rights under such policies. ’ ’
The Legislature obviously intended by this statute to take care of those of its citizens who already had policies of insurance. It could not, therefore, have intended to limit the effect of the statute to policies which were to be issued in the future. *226 Again, if this had been its intention, it could easily have so stated.
In regard to the problem of unconstitutionality of the act when applied to policies in existence at the time of the effective date thereof as violating the full faith and credit provision of the Constitution, it seems to me that the defendant company was faced with a decision in respect to doing business in the State of Pennsylvania in the future after the passage of the Pennsylvania “Unauthorized Insurers Process Act” on May 20, 1949. If the defendant company elected to cease doing future business in the State of Pennsylvania after September 1, 1949, a problem might have been presented as to the constitutionality of the “ Unauthorized Insurers Process Act ” insofar as the company’s contractual liability under existing policies which it had not seen fit to terminate under paragraph 16 of its policies’ standard provisions. Following the reasoning set forth in Piscina v. City of New York (198 Misc. 315, supra) the defendant company could not have been considered to have agreed in advance to accept something of which it did not at the time have knowledge. However, this problem is not presented on this motion.
While it is not specifically set forth in the moving papers, it is not questioned and the court will assume for the purposes of the motion, that the defendant is still engaged in the regular course of its business by mail in Pennsylvania. It, therefore, follows that the defendant did not elect to discontinue doing business in Pennsylvania before September 1, 1949. It must, therefore, be deemed to have assumed the liability placed upon it by the “ Unauthorized Insurers Process Act” of the State of Pennsylvania and to have involuntarily (by statutory enactment) designated the Insurance Commissioner of Pennsylvania its agent upon whom service of process in the Pennsylvania courts could be made, in respect to each policy of insurance in force September 1, 1949.
There is considerable authority substantiating the proposition that the constitutionality of an act can be waived and that a corporation can be estopped from raising the question. (16 C. J. S., Constitutional Law, § 89, pp. 263-268; Jahn v. Berzon, 255 App. Div. 1023; Shepherd v. Mount Vernon Trust Co., 269 N Y. 234, 246; Matter of New York, Lackawanna & Western R. R. Co., 98 N. Y. 447, 452, 453.)
It seems to me that the nature of the mail-order insurance business constituting as it does for practical purposes a year to year contractual relationship between the company and its assured, renders such companies most susceptible to the appli *227 cation of the rule laid down in International Shoe Co. v. Washington (326 U. S. 310, 316, supra) “ in order to subject a defendant to a judgment in personam, if he be not present within the territory or forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice.’ ”
There is nothing in the nature of the defendant’s method of doing business which would justify the contention that as long as it desired to continue the mail-order business of insurance with residents of Pennsylvania, keeping itself at all times aloof and absent from the State and having no agent or representative within the State of Pennsylvania upon whom process could be served, it should be considered to be in a different position in respect to a policy of insurance which was in force the day before the effective date of the statute and upon which it was contractually obligated on the day upon which the statute became effective than it would be in respect to a policy issued the day after the statute became effective. The continuing nature of the insurance contract itself almost required the acknowledgment that any obligations, which the company might have under a policy, would in reality have been in force and effect only for a period of one year since, if the next year’s premium is not paid the policy, by its very terms, is automatically terminated and void. When viewed in this manner, the retroactive aspect of the statute does not appear to the court to be very serious. Certainly, insofar as the large foreign mail-order insurance companies are concerned, to make them subject to the provisions of the statute would not “ offend ‘ traditional notions of fair play and substantial justice! ’ ”
While, as above stated, it cannot be ascertained from the motion papers that the plaintiff’s action did not accrue between September 1, 1949, the effective date of the statute, and September 14, 1949, the date the action was commenced by service upon the Commissioner of Insurance, I am of the opinion that it was the intention of the Pennsylvania State Legislature to make the Pennsylvania “ Unauthorized Insurers Process Act” applicable to policies of insurance in force upon the lives of residents of the State upon the effective date of the statute. I am also of the opinion that the act itself was not unconstitutional insofar as it applied to the policy of insurance held by the plaintiff’s intestate upon which judgment was obtained by the plaintiff against the defendant in Pennsylvania.
The motion is, therefore, denied with $10 costs. Order accordingly.